353 So.2d 1230 (1978)
The FLORIDA DEPARTMENT OF OFFENDER REHABILITATION, Petitioner,
v.
Leroy JERRY and the Florida Division of Administrative Hearings, Respondents.
No. FF-303.
District Court of Appeal of Florida, First District.
January 10, 1978.
Rehearing Denied February 7, 1978.
Earl H. Archer, III, Tallahassee, for petitioner.
John T. Chandler, Gainesville, for respondents.
ERVIN, Judge.
Leroy Jerry, an inmate in the state correctional institution, was charged by the Department of Offender Rehabilitation (DOR) with unarmed assault in violation of Florida Administrative Code Rule 33-3.08(2).[1] He was found guilty, placed in disciplinary *1231 confinement and served his penalty. He then attacked the above Rule in a Section 120.56,[2] Florida Statutes (Supp. 1976), proceeding. Rule 33-3.08 sets forth the procedure by which an inmate is subjected to disciplinary confinement and forfeiture of gain-time. Authority for the Rule is derived from Section 944.28, Florida Statutes (1975), which allows forfeiture of all or part of gain-time earned by a prisoner should he be guilty of certain specified acts, including assault.[3]
Jerry's petition for an administrative determination that Rule 33-3.08(2) was invalid alleged he was a person substantially affected since he had been charged with an infraction of the Rule, assault, and as a result his substantial interests in retaining accrued gain-time and freedom from disciplinary confinement were at issue. He also alleged he was substantially affected because the maximum penalty to which he could be exposed was disciplinary confinement for 60 days and 180 days loss of gain-time. The hearing examiner found Rule 33-3.08(2) invalid for failure to meet the procedural guidelines set forth in Section 120.57, Florida Statutes (Supp. 1976). He concluded that since Section 120.72(1), Florida Statutes (Supp. 1976), makes uniform the rulemaking and adjudicative procedures used by the administrative agencies of the state, there was no exemption to DOR from the requirements of the new APA as found in Chapter 120.[4] Consequently, the Department is an agency as defined by Section 120.52(1)(b). By juxtaposing certain provisions of the Rule with Section 120.57,[5] he found the Rule conflicted with pertinent portions of the statute and could not stand.
*1232 The hearing officer's order involves matters of great substance; nevertheless, for the reasons stated infra, it is not necessary for us to address the primary question raised as to the validity of the Rule since Jerry has not met the threshold requirement of standing.
Our efforts to determine what occurred at the hearing before the disciplinary team are thwarted because there is no record of those proceedings. It was not established Jerry ever made a request for a Section 120.57 hearing during the disciplinary proceedings. We do know however that at the time of the hearing before the administrative examiner, Jerry had completely served his disciplinary confinement. But we do not know whether Jerry suffered any loss of gain-time. The only inescapable conclusion which can be reached from the administrative proceedings is that the hearing examiner found Jerry has standing because he is a member of the prison class, has been subjected to alleged invalid procedures in the past and may possibly in the future be subjected to such procedures. Observe the following from the hearing officer's order:
"Respondent argues that Petitioner has no standing to seek an administrative determination of the validity of the Rule because he had already been found guilty of an infraction under the Rule and been subjected to discipline prior to the final hearing in this cause and thus it is not now affected by the Rule. The Hearing Officer specifically rejects this argument. The Rule applies to inmates in the correctional institutions of this state. Petitioner is such an inmate. Petitioner has been subjected to the procedures set forth in the Rule and may at any time in the future be again subjected to those procedures. Therefore, Petitioner's interest is certainly a timely and current interest and he should not be required, as argued by Respondent, to again violate the provisions of the Rule in order to gain the requisite interest necessary to challenge the validity of the Rule.
* * * * * *
"... [I]t appears that petitioner's interest in loss of gain-time having real substance and being sufficiently embraced within the Fourteenth Amendment `liberty' to entitle him to due process, is a substantial interest as that term is used in Section 120.57, F.S. It follows that a Rule such as that challenged herein, which sets forth the procedure by which Petitioner's substantial interest shall be determined and his rights protected, has substantial affect upon Petitioner entitling him to challenge its validity under Section 120.56, F.S."
Any attempt to comprehend in depth the meaning of standing involves a careful study of the pertinent provisions of the new APA, compared with the 1961 Act as well as a comparison with the federal APA and the cases interpreting it.
The relief Jerry seeks is in essence an administrative declaration of his rights as affected by the DOR Rule. Florida's APA provides two distinct types of declaratory statements: (1) A declaratory statement involving the applicability of a statute, rule or order as provided by Section 120.565, and (2) a declaratory statement on the validity of a rule or proposed rule, provided by Sections 120.54 and .56.
Section 120.30, Florida Statutes (1973), repealed by Ch. 74-310, Section 4, Laws of Florida, effective January 1, 1975, permitted any "affected party" to obtain a judicial declaration of the validity of any rule of an administrative agency by bringing a declaratory judgment action in the circuit court of the county in which such party resides.[6]
The legislature in enacting Sections 120.54(4)(a) and 120.56, employed more restrictive language, "substantially affected", than it did in enacting Section 120.30. The legislature must be presumed to have intended a different result by employing language describing a more limited scope of persons affected in a given situation and less restrictive language in other situations. For example, Section 120.54(3) permits all *1233 "affected persons" an opportunity to present evidence and argument on all issues under consideration appropriate to inform the agency of their contentions within 14 days after date of publication of the notice of a proposed rule.
There are very few Florida cases which have addressed the question of standing under the 1974 APA. In A.S.I., Inc. v. Florida Public Service Commission, 334 So.2d 594 (Fla. 1976), our Supreme Court held that a competitor who filed a protest before the Public Service Commission to an air freight delivery company's application to transport delayed, misplaced and/or misrouted baggage from Jacksonville International Airport to specified points in northeast Florida had no standing as a substantially interested party within the meaning of Section 120.57, even assuming the competitor, A.S.I., would experience competition from the air freight delivery company's operation under its for hire permit. Later in Gadsden State Bank v. Lewis, 348 So.2d 343 (Fla. 1st DCA 1977), we held that Gadsden State Bank, a competitor of Quincy State Bank which had filed an application with the Comptroller for authority to establish a branch bank near Gadsden's existing facility, had standing as a party substantially interested in a Section 120.57(1) hearing. However, the opinion carefully pointed out that the potential competitive injury to Gadsden by a branch bank is not explicitly a matter of statutory concern under the APA, but it was made so by the Department's rule requiring, as a condition to branch banking, that local conditions assure reasonable promise of successful operation for the proposed branch. We thereby concluded that Gadsden was a party because it was made a party by agency rule defining party as a protestant in such agency proceedings.
Under the federal APA before a person may seek redress in the courts from agency action, he must be either "adversely affected or aggrieved by agency action..."[7] This is practically the same standard under Section 120.68(1), permitting "[a] party who is adversely affected by final agency action ... to [seek] judicial review." "Adverse" is different in meaning from "substantial," the former defined as "acting against or in a contrary direction"; the latter defined as "consisting of or relating to substance, ... not imaginary or illusory ... considerably large."[8]
Despite the dissimilarities of the terms under the federal and Florida Acts, decisions involving standing in the federal courts often turn upon issues pertaining to whether a person seeking relief has shown that his interests are substantial and not illusory. The cases have no common thread running throughout and the facts must be analyzed on a case by case basis.[9]
In Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972), an environmental group challenged the United States Forest Service's proposed development of the Mineral King Valley, a part of the Sequoia National Forest. The group merely alleged "a special interest in conservation and sound maintenance of the national parks, game refuges and forests of the country." The Court held that standing to seek judicial review under the federal APA existed only to those who could show "that the challenged action had caused them `injury in fact', and where the alleged injury was an interest `arguably within the zone of interest to be protected or regulated' by the statutes that the agencies were claimed to have violated." 405 U.S. at 733, 92 S.Ct. at 1365. It stressed the importance that a party seeking judicial review must *1234 himself be among the injured for it is this requirement which gives a litigant a direct stake in the controversy and prevents the judicial process from becoming no more than a vehicle for the vindication of the value interests of concerned bystanders.
A year later, paradoxically, the United States Supreme Court in United States v. SCRAP, 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973), permitted standing to various environmental groups challenging the Interstate Commerce Commission's decision allowing railroads to increase freight rates. Petitioners contended the 2.5% surcharge on freight rates would cause their members "economic, recreational and aesthetic harm" by discouraging recyclable materials and promoting the use of raw materials that compete with scrap, thus adversely affecting the environment. The environmental group, SCRAP, claimed its members were harmed by the ICC action since (1) each of its members was caused to pay more for finished goods, and (2) each of its members used the forests, rivers, mountains and other natural resources in the Washington, D.C. area for recreational purposes and that this use was disturbed by the adverse environmental impact caused by the nonuse of recyclable goods brought about by a rate increase on such commodities.[10]
The majority opinion distinguished the case from Sierra Club since in the latter case there was no allegation that the party seeking review was among the injured whereas in SCRAP the litigants claimed that the alleged illegal action of the ICC would harm them in their use of natural resources in the Washington metropolitan area.
In Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), a woman was held without standing to challenge an anti-abortion statute in an action where she had alleged she suffered from a "neural-chemical" disorder, and that her doctor advised against pregnancy and also advised against birth control pills, and that her marital happiness was adversely affected by fear of pregnancy. The court interpreted the facts to mean only that the couple might suffer some future possible injury from the application of the anti-abortion statute, saying
"Their alleged injury rests on possible future contraceptive failure, possible future pregnancy, possible future unpreparedness for parenthood, and possible future impairment of health. Any one or more of these several possibilities may not take place and all may not combine. In the Does' estimation, these possibilities might have real or imagined impact upon their marital happiness. But we are not prepared to say that the bare allegation of so indirect an injury is sufficient to present an actual case or controversy." 410 U.S. 128, 93 S.Ct. 714.
In O'Shea v. Littleton, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974), plaintiffs brought a class action against law enforcement officers for injunctive relief alleging various patterns of conduct in the administration of criminal justice which deprived them of rights secured by the Constitution and statutes. It was specifically alleged that the magistrate and judge had deprived members of their class of their constitutional rights by setting bond without regard to the facts, imposing higher bond for blacks than for whites and requiring members of the class to pay for trial by jury. The court held that plaintiffs had not alleged an actual *1235 case or demonstrated injury and that abstract injury is not enough. "It must be alleged that the plaintiff `has sustained or is immediately in danger of sustaining some direct injury' as a result of the challenged statute or official conduct." 414 U.S. at 494, 94 S.Ct. at 675. It continued that the injury or threat of injury must be both real and immediate, not conjectural or hypothetical. The Court observed that while there had been no allegation by plaintiffs that injury had occurred, counsel for plaintiffs had stated during argument that some of the plaintiffs had been defendants in proceedings before a magistrate and had suffered from unconstitutional treatment. The court continued:
"Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, if unaccompanied by any continuing, present adverse effects." 414 U.S. at 495-496, 94 S.Ct. at 676 (Emphasis added.)[11]
The Court took pains to note there was no allegation that any of the named plaintiffs were then serving an allegedly illegal sentence or were on trial or awaiting trial, and concluded:
"Of course, past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury. But here the prospect of future injury rests on the likelihood that respondents will again be arrested for and charged with violations of the criminal law and will again be subjected to bond proceedings, trial, or sentencing before petitioners.
* * * * * *
But it seems to us that attempting to anticipate whether and when these respondents will be charged with a crime and will be made to appear before either petitioner takes us into the area of speculation and conjecture.
* * * * * *
We assume that respondents will conduct their activities within the law and so avoid prosecution and conviction as well as exposure to the challenged course of conduct said to be followed by petitioners.
As in Golden v. Zwickler [394 U.S. 103, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969)], we doubt that there is `"sufficient immediacy and reality"' to respondents' allegations of future injury to warrant invocation of the jurisdiction of the District Court. There, `it was wholly conjectural that another occasion might arise when Zwickler might be prosecuted for distributing the handbills referred to in the complaint.' Id., at 109, 89 S.Ct. 956, 22 L.Ed.2d 113. Here we can only speculate whether respondents will be arrested, either again or for the first time, for violating a municipal ordinance or a state statute, particularly in the absence of any allegations that unconstitutional criminal statutes are being employed to deter constitutionally protected conduct." 414 U.S. at 496-7, 94 S.Ct. at 676.
Jerry, like the plaintiffs in O'Shea v. Littleton, supra, has failed to show injury which is accompanied by any continuing, present adverse effects. He has failed to demonstrate, either at the time his petition for administrative relief was filed or at the time of the hearing, that he was then serving disciplinary confinement or that his existing prison sentence had been subjected to loss of gain-time. He has not alleged the Rule is unconstitutionally invalid, rather that the procedure afforded him by the Rule does not comport with the procedure provided by Chapter 120. True, the loss of gain-time is a Fourteenth Amendment liberty entitling a prisoner to due process. *1236 Wolff v. McDonald, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 879 (1974). Were we confronted with a situation in which loss of gain-time had in fact occurred there would be no question but that injury in fact resulted and that Jerry had appropriate standing to challenge the Rule. Here there is nothing in the record so demonstrating. Finally we note that Jerry has not been made a party by agency rule as in Gadsden State Bank v. Lewis, supra.
As in O'Shea, Jerry's prospects of future injury rest on the likelihood that he will again be subjected to disciplinary confinement because of possible future infractions of Rule 33-3.08(2). Whether this will occur, however, is a matter of speculation and conjecture and we will not presume that Jerry, having once committed an assault while in custody, will do so again. To so presume would result only in illusory speculation which is hardly supportive of issues of "sufficient immediacy and reality" necessary to confer standing.
Petition for review is granted and the order of the hearing examiner is reversed.
BOYER, Acting C.J., and MILLS, J., concur.
NOTES
[1] Rule 33-3.08 provides a supervising officer shall investigate any apparent violation and any reports of the incident, and shall file his own report with the disciplinary team. The team meets and reviews the two reports. If the team finds a chargeable offense under Section 944.28(2)(a), the Rule provides a copy of the charges will be delivered to the inmate at least 24 hours in advance of a hearing before the team. The Rule states the hearing will not be open to the public and if the inmate is not properly able to represent himself, he should be provided a staff representative. No mention is made in the Rule of the right to counsel in such a disciplinary hearing. The Rule further provides (1) the chairman of the team "... may determine that the source of certain information should not be revealed to the inmate ...", and (2) a witness need not be called if so doing would create a risk of reprisal or would undermine authority.
[2] Section 120.56(1) and (2), states in part:

"(1) Any person substantially affected by a rule may seek an administrative determination of the invalidity of the rule on the ground that the rule is an invalid exercise of delegated legislative authority.
(2) The petition seeking an administrative determination under this section shall be in writing and shall state with particularity facts sufficient to show the person seeking relief is substantially affected by the rule and facts sufficient to show the invalidity of the rule."
[3] Section 944.28(2)(b) provides the method of forfeiture: A written charge is delivered to the prisoner giving notice of a hearing before a disciplinary committee. That committee, composed of prison officials, may or may not find him guilty. If he is found guilty, it may recommend to the superintendent of the prison forfeiture of any gain-time. If the superintendent approves the recommendation, it is then forwarded to the Department which may declare a forfeiture.
[4] Although the federal APA was held not applicable to federal disciplinary proceedings in Clardy v. Levi, 545 F.2d 1241 (9th Cir.1976), there does not appear in Florida's APA any provision which expressly excludes DOR's disciplinary proceedings from APA control. Moreover, at least one scholar, and a member of the Law Revision Council responsible for drafting the 1974 APA, has opined that agency action extends to prison disciplinary matters. Levinson, The Florida Administrative Procedure Act: 1974 Revision and 1975 Amendments, 29 U.Miami L.Rev. 617, 628 (1975).
[5] For example a party to a Section 120.57 hearing is entitled to not less than 14 days notice under subsection (1)(b)(2), therefore sub-paragraph eight of the Rule violates the statute's notice requirements since it permits only 24 hours' notice. Additionally Section 120.57(1)(b)4 allows parties to be represented by counsel before administrative tribunals whereas sub-paragraph 13(d) of the Rule allows a staff representative to represent the inmate only if he is illiterate or where the complexity of the issues makes it unlikely the inmate is able to represent himself. Finally, sub-paragraph (h) of the Rule gives the chairman of the disciplinary team the power to withhold the source of incriminating information from the inmate. Witnesses may not be called if doing so would create a risk of reprisal or would undermine authority. Section 120.57(1)(b)4, however, gives all parties the opportunity to respond, to present evidence and to conduct cross-examination.
[6] In interpreting the effect of Sec. 120.30, we stated in D. & W. Oil Company, Inc. v. O'Malley, 293 So.2d 128 (Fla. 1st DCA 1974), that standing under the statute was broader than declaratory actions pursued under Ch. 87.
[7] Section 10 of the Federal Administrative Procedure Act (5 U.S.C. § 702) provides:

"A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."
[8] Webster's New Collegiate Dictionary (1976).
[9] Professor Davis after analyzing the more recent United States Supreme Court opinions concluded that "the dozen efforts [by the Court] to locate the line [between injury and no injury] have produced some seemingly conflicting case law, and all the standing cases of the 1970s have been decided by a divided court." Davis, ADMINISTRATIVE LAW OF THE SEVENTIES, SUPPLEMENTING ADMINISTRATIVE LAW TREATISE 507 (1976).
[10] In footnote numbered fourteen to the opinion, the Court specifically rejected the government's contention that standing should be limited only to those who have been "significantly" affected by agency action. 412 U.S. 689, 93 S.Ct. 2417. The Court stated that the standard which it applied, "injury in fact," reflects the statutory requirement that a person be "adversely affected," which distinguishes the interests of "a person with a direct stake in the outcome of a litigation  even though small  from a person with a mere interest in the problem." Ibid. Since the test suggested by the government, and rejected by the Court, was practically identical to the words used in Section 120.56, the Court's decision might conceivably have been different had it been presented with a statute worded in the same fashion as Section 120.56. Nevertheless, if the SCRAP decision were the final word on the federal question of standing, it would be highly persuasive authority for Jerry's position; however, there are other cases.
[11] One may only speculate whether the opinion in O'Shea was intended to modify the broad language employed by the court in SCRAP to confer standing. Observe the following language from the latter opinion:

"Of course, pleadings must be something more than an ingenious academic exercise in the conceivable. A plaintiff must allege that he has been or will in fact be perceptibly harmed by the challenged agency action, not that he can imagine circumstances in which he could be affected by the agency's action." 412 U.S. at 688-689, 93 S.Ct. at 2416. (Emphasis added.)