367 So.2d 1045 (1979)
STATE of Florida, DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, Petitioner,
v.
ALICE P., Susan A., Jeannette R., Samuel Barr, M.D., and Jacksonville Women's Health Organization, Inc., and Central Florida Women's Health Organization, Inc., Respondents.
No. II-259.
District Court of Appeal of Florida, First District.
January 31, 1979.
Rehearing Denied March 12, 1979.
*1047 George L. Waas and Charles T. Collette, and Kenneth G. Oertel, Tallahassee, for petitioner.
Terry L. DeMeo, South Miami, Jerry G. Traynham and Ben R. Patterson, Tallahassee, and Frank Susman, St. Louis, Mo., for respondents.
BOYER, Acting Chief Judge.
By Petition for Review Pursuant to F.S. 120.68 and Rule 4.5(c) Fla.App.R., the State of Florida Department of Health and Rehabilitative Services (hereinafter referred to as the Department) seeks review of a Final Order issued by a hearing officer of the Division of Administrative Hearings. Numerous points and sub-points are posed for our consideration. For clarity we will depart from our customary format of opinions and state the issues as we consider them following a recitation of the essential facts, which are not in dispute.
The Department administers the Medicaid program for the State of Florida pursuant to F.S. 409.266 and Chapters 10C-7 and 10C-8 of the Florida Administrative Code. (F.A.C.) That program is jointly funded by state and federal funds. Under the program, the Department makes payments for physicians' services and for inpatient hospital *1048 services rendered to Medicaid recipients. Rules 10C-7.38 and 10C-7.39, F.A.C., are the Department's rules which describe physicians' services and inpatient services, respectively.
As a result of actions taken by the federal government federal funds for elective non-therapeutic abortions were terminated in the summer of 1977 and the Department subsequently received no federal funds to pay for such abortions. Federal funds thereafter could only be used to pay for Medicaid abortions when "the attending physician certifies the abortion is necessary because the life of the mother would be endangered if the fetus were carried to term or if the procedure is necessary to terminate an ectopic pregnancy."
In an effort to harmonize its rules with the changes made by the federal government, the petitioner promulgated emergency rules on or about September 1, 1977, and initiated proceedings for the adoption of permanent rules by publishing a notice of proposed amendments to the subject rules on October 14, 1977.
A petition was thereupon filed pursuant to F.S. 120.54(4) on behalf of Alice P. and Susan A., individually and as representatives of a class on October 28, 1977, 14 days after publication of the notice, asserting in part that the proposed amendments constituted an impoundment of funds appropriated by the Legislature and that the notice of the summary of the estimate of economic impact was incorrect or erroneous.
The Department moved to dismiss the petition on the grounds of lack of standing and the unavailability of class actions in an F.S. 120.54(3) proceeding.
At a pre-hearing conference, the hearing officer denied the motion to dismiss as to standing, reserved ruling as to the motion to dismiss the class action and set the hearing date for November 30, 1977.
On or about November 13, 1977, a petition for intervention on behalf of Jacksonville Women's Health Organization, Inc., and Central Florida Women's Health Organization, Inc., and similarly situated providers was filed. That petition was filed by an out-of-state attorney not admitted to The Florida Bar and not then associated as co-counsel with a member of The Florida Bar.
On or about November 17, 1977, an amended petition was filed on behalf of anonymous petitioners Jane Doe and Janet Woe and petitioner Samuel J. Barr, M.D. together with a motion for leave to amend.
The Department opposed the petition for intervention by the corporate intervenors on the grounds that it expanded the issues presented in the original petition and was filed by an out-of-state lawyer contrary to Fla.R.Civ.P. 1.030. The Department also opposed the amended petition on the grounds that, as to Barr, the amended petition raised new issues and established a new cause of action and, as to Jane Doe and Janet Woe, the amended petition failed to demonstrate adequate statutory standing and the process was insufficient.
On or about November 23, 1977, Jeannette R. sought to intervene. On the same day, the other anonymous petitioners (Alice P., Susan A., Jane Doe and Janet Woe) moved for a protective order or partial in camera inspection to prevent their identities from becoming public record in an administrative proceeding.
Based upon Alice P. and Susan A.'s response to the Department's first set of interrogatories that they were no longer pregnant, the Department again moved to dismiss the original petition premised upon a demonstrable lack of standing in that, not being pregnant, they could not challenge the proposed amendments to the subject rules. On the same day (November 28, 1977  two days before the scheduled hearing), the Department moved in opposition to the motion for protective order or partial in camera proceedings on the ground that, among others, a hearing officer has no authority to seal public records and moved to dismiss Jeannette R.'s petition for lack of standing and untimeliness, urging the inequity of multiple filings on behalf of anonymous petitioners and others seeking to expand the issues beyond the original petition.
*1049 A second pre-hearing conference was held on November 30, 1977. Although counsel for the anonymous petitioners admitted that the purpose of the amended petition was "to include some expanded allegations and two new parties", the hearing officer stated that he was not concerned with the technicalities of standing but was "interested in reaching the merits in this case." To that end, the hearing officer ruled that "any woman of childbearing age and regardless of whether they are pregnant or not entitles them to pursue this action". However, he subsequently amended his finding to embrace only "women of childbearing age who are Medicaid recipients".
The Department's motion to dismiss on the grounds that anonymous petitioners Alice P. and Susan A. had procured abortions, thereby vitiating any claim of standing, and that an inadequate petition cannot be revised by subsequent untimely filed pleadings was denied. During the hearing, Alice P. was dismissed as a party without evidence having been adduced regarding her standing.
At the final hearing, Jeannette R. and Janet Woe stated that they were pregnant Medicaid recipients. Both had attempted to use their Medicaid benefits to obtain desired abortions, but were denied them because of the funding cutoff.
Respondent Dr. Samuel Barr, testified generally about the effects of the Medicaid abortion ban from his perspective as a provider and as a physician.
Michael Morton, who prepared the Department's Economic Impact Statement, testified concerning his qualifications to properly prepare such a study and his understanding of the meaning of the statute. He testified concerning how he prepared the statement, and that, in his opinion, the statute was impossible for anyone to comply with.
Dr. Howard Gitlow, a statistician from the University of Miami who specializes in research in the economics of abortion, explained the technical requirements of the statute. He testified as to those respects in which the Department's statement did not comply with the statutory requirements, and concluded that the Department's statement was very poor.
On December 23, 1977 the hearing officer issued the Final Order here sought to be reviewed invalidating the Department's proposed amendments to Rule Sections 10C-7.38 and 10C-7.39, Florida Administrative Code (F.A.C.), on the grounds that the proposed amendments constituted an impoundment of legislatively appropriated funds and the Department's economic impact statement was inadequate and incomplete.
The Department phrases the points argued in its briefs as follows:
I.
WHETHER THE HEARING OFFICER ERRED IN EXERCISING JURISDICTION AS TO A PETITION CHALLENGING PROPOSED AMENDMENTS TO RULES UNDER § 120.54(4), F.S., FILED BY FICTITIOUS PETITIONERS, ALICE P. AND SUSAN A., WHO COULD NOT DEMONSTRATE STANDING WITHIN THE STATUTORY 14-DAY TIME LIMIT IN WHICH TO CHALLENGE A PROPOSED RULE.
II.
WHETHER THE HEARING OFFICER ERRED IN EXERCISING JURISDICTION AS TO PETITIONS FILED AFTER THE PASSING OF THE 14-DAY TIME LIMIT WHEN THESE PETITIONS RAISE NEW ISSUES AND FICTITIOUS PETITIONERS-INTERVENORS CANNOT AND DO NOT DEMONSTRATE STANDING.
III.
WHETHER THE HEARING OFFICER ERRED IN CONFERRING STANDING UPON FEMALE MEDICAID RECIPIENTS OF CHILDBEARING AGE WHEN THE CHALLENGED PROPOSED AMENDMENTS DEAL EXCLUSIVELY WITH TERMINATION *1050 OF FUNDS FOR ELECTIVE ABORTIONS.
IV.
WHETHER THE HEARING OFFICER ERRED IN ALLOWING THIS CASE TO PROCEED AS A CLASS ACTION.
V.
WHETHER THE HEARING OFFICER ERRED IN RULING THAT THE DEPARTMENT'S PROPOSED AMENDMENTS CANNOT BE PROMULGATED UNDER ANY CIRCUMSTANCES BECAUSE THESE AMENDMENTS CONSTITUTE THE IMPOUNDMENT OF LEGISLATIVELY APPROPRIATED FUNDS.
VI.
WHETHER THE HEARING OFFICER ERRED IN RESTRICTING THE DEPARTMENT'S EXAMINATION AS TO THE VALID AVAILABLE DEFENSE OF CHAMPERTY AND MAINTENANCE.
VII.
WHETHER THE HEARING OFFICER ERRED IN DECLARING INVALID THE DEPARTMENT'S ECONOMIC IMPACT STATEMENTS WHEN THE CHALLENGE THERETO WAS NOT CONTAINED IN THE ORIGINAL PETITION AND THE DEPARTMENT FOLLOWED THE COMMANDS OF § 120.54(2), F.S.
We do not find it necessary to consider the points in the order presented.
As to class action status, we hold that a proposed rule challenge is not, under Florida law, a proper proceeding for the maintenance of a class action.
In Cordell v. World Ins. Co., 355 So.2d 479 (Fla. 1st DCA 1978), we discussed the requisites of a class action and there referred to the leading Florida cases on the subject, quoting from Harrell v. Hess Oil and Chemical Corporation, 287 So.2d 291 (Fla. 1973) in which the Supreme Court of Florida succinctly summarized the requisites of a class action, citing Port Royal, Inc. v. Conboy, 154 So.2d 734 (Fla. 2nd DCA 1963), as follows:
"The standards which must be met in order properly to plead a class action have been stated many times, but are perhaps set out best in Port Royal, Inc. v. Conboy, 154 So.2d 734 (Fla.App.2d 1963). As noted there, a complaint in a class action suit must:
"(1) show the necessity for bringing the action as a class suit;
"(2) show plaintiff's right to represent the class;
"(3) allege that plaintiff brought suit on behalf of himself and all others similarly situated;
"(4) allege the existence of a class, described with some degree of certainty;
(5) allege that the members of the class were so numerous as to make it impracticable to bring them all before the court;
"(6) make it clear that plaintiff adequately represents the class; and
"(7) show that the interests of the plaintiff were co-extensive with the interests of the other members of the class." (Harrell v. Hess Oil and Chemical Corporation, 287 So.2d 291, 293-294 (Fla. 1973) (355 So.2d at page 480)
Sub judice, neither the original petition filed by the anonymous complainants, the amendments thereto nor the subsequent proceedings properly complied with standards (1), (2), (4), (6), nor (7) as above quoted. Indeed, it is obviously impossible in a proposed rule challenge proceeding to ever comply with standard (1), viz: Show the necessity for bringing the action as a class suit.
In an administrative proceeding wherein a proposed rule is challenged, if a single challenger successfully attacks the proposed rule then it does not become operational as to any other person similarly situated. Accordingly, there is simply no necessity for a class action. An agency may not enforce *1051 an invalid rule as to any person substantially affected by it even if the successful challenger is a single individual.
Whether or not a rule adopted following an unsuccessful challenge during the adoption process may be subsequently challenged by the unsuccessful challenger after adoption, or by others similarly situated or similarly interested or affected, is not an issue here presented and will not therefore be addressed by us. (But see State Department of Health, etc. v. Barr, 359 So.2d 503 (Fla. 1st DCA 1978).
Addressing the point relative to champerty and maintenance, we note the holding of the Supreme Court of Florida in Cone v. Benjamin, 157 Fla. 800, 27 So.2d 90 (1946), wherein the court stated:
"The general rule seems to be that a suit will be dismissed because of champerty only when the champertous assignment or other champertous contract is the basis of plaintiff's claim and is directly involved in the action, and not when the champertous contract is one between the plaintiff and his attorney, collateral in its nature, and which in no wise affects the obligation of the defendant to the plaintiff. It it the champertous contract which is void, and the right of action of the plaintiff is not affected thereby, but must stand or fall upon its own merits or demerits. See 14 C.J.S. Champerty and Maintenance § 38, p. 382, and cases cited." (27 So.2d at pages 107-108)
Although a court or hearing officer should be ever vigilant of unprofessional or unethical conduct and should be liberal in allowing questions framed to determine whether "the cause is following the client or the client is following the cause" we do not find, under the facts and circumstances of this particular case, that the hearing officer erred in refusing to permit extended questions in that regard.
Turning now to the issue of standing: The Final Order here challenged contains the following recitation:
"* * * After hearing all the testimony in this proceeding it is the determination of this Hearing Officer that all women of childbearing age who are Medicaid recipients are substantially affected by the proposed rule and have adequate standing to challenge it pursuant to Chapter 120, F.S."
That holding is clearly erroneous. Whatever the law may be in Federal courts or other jurisdictions, the Florida law on the subject has been clearly and unambiguously settled by this court's opinion (which the respondents characterize as a "somewhat restrictive view") in Florida Dept. of Offender Rehab. v. Jerry, 353 So.2d 1230 (Fla. 1st DCA 1978), cert. denied 359 So.2d 1215 (Fla. 1978). In that case this court refused standing to a prison inmate to challenge a rule even though he had prior to the challenge been directly affected by its operation. Clearly under the rationale of the Jerry case the hearing officer's holding that all women of childbearing age, whether pregnant or not, who are Medicaid recipients are substantially affected by the proposed rule and therefore have standing, is much too broad to countenance our approval. No useful purpose will be here achieved by attempts to paraphrase the holding in the Jerry case nor by lengthy quotations therefrom. The opinion is clearly and lucidly written, numerous authorities are cited and the court's reasoning allows no room for doubt.
Nor does the hearing officer's holding find support in this court's opinion, Gadsden State Bank v. Lewis, 348 So.2d 343 (Fla. 1st DCA 1977). The observation of the author of the Jerry case distinguishing the Gadsden State Bank case wherein he stated "Finally we note that Jerry has not been made a party by agency rule as in Gadsden State Bank v. Lewis, supra" (353 So.2d at page 1236) is equally applicable here.
Respondents seek to distinguish the Jerry decision on the basis that the court was there concerned with a rule challenge pursuant to F.S. 120.56 whereas sub judice respondents were challenging a proposed rule in accordance with F.S. 120.54(4), urging that the test for standing to challenge a proposed rule is easier to meet than that for *1052 the challenge of an adopted rule. The thrust of respondents' argument is that although both statutes contain the "substantially affected" test, F.S. 120.56(2) requires that a petition challenging an adopted rule show the person seeking relief is substantially affected by the rule while F.S. 120.54(4)(b) requires only a showing that the challenger of the proposed rule would be substantially affected by it; concluding that the difference between the present tense "is" employed by the legislature in F.S. 120.56(2) as compared to the future tense "would be" contained in F.S. 120.54(4)(b) is significant and indicates a lower threshold of standing in the latter than in the former. We reject that reasoning. It is clear that the legislature adopted the verb tense applicable to the subject under consideration. As to an already adopted rule a person otherwise having standing must demonstrate that he or she "is" substantially affected by the rule. On the other hand, the present tense is inapplicable to a rule which has not yet come into existence since it is only proposed. Under those circumstances the legislature quite properly and logically provided that a challenger who surely cannot show that he "is" affected by the proposed rule because it has not yet even come into existence, must show that he "would be" substantially affected by it. There is no difference between the immediacy and reality necessary to confer standing whether the proceeding is to challenge an existing rule or a proposed rule.
As we held in Agrico Chemical Co., et al. v. State of Florida, Department of Environmental Regulation, et al., 365 So.2d 759 (Fla. 1st DCA 1978), the burden is upon the challenger of a proposed rule to demonstrate its invalidity. The burden is also upon the challenger, when standing is resisted, to prove standing.
Notwithstanding the erroneous standard adopted by the hearing officer, we must determine whether or not the several challengers in fact had standing. As already recited the challenge was initially made by Alice P. and Susan A. Alice P. was dismissed as a party without standing having been proved and that dismissal is not an issue here.
Unlike Roe in Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), the record in the case sub judice reveals that Susan A. was not pregnant at the time the rule challenge was filed. It is apparent, therefore, that she did not meet the test for standing required by the Jerry decision.[1] The record is silent as to the standing of Jane Doe. Janet Woe and Jeannette R. both testified that they were pregnant Medicaid recipients desiring abortions and unable to obtain same because of the "cutoff" of Medicaid funds. Samuel Barr, M.D., testified that he had been a Medicaid provider for five years, that he was the Director of an abortion clinic and had held that position for the past four and one-half years, that approximately thirteen per cent of the clinic's abortions in that period were Medicaid funded, and that since the Medicaid funding was cutoff the number of Medicaid eligible patients patronizing the clinic had decreased significantly. Other than the allegations of the unsworn petition to intervene, the record reflects no basis for a finding of standing of Jacksonville Women's Health Organization, Inc. and Central Florida Women's Health Organization, Inc.
The query, then, is whether Janet Woe and Samuel J. Barr, M.D., who came into the proceeding by way of an amended petition and Jeannette R., as intervenor, all of whom meet the threshold test,[2] otherwise have standing.
F.S. 120.54(4)(b) requires that one seeking an administrative determination of the invalidity of a proposed rule must file his petition of request with the Division *1053 within fourteen days after the date of publication of the notice required by subsection (1) of the statute. That fourteen day period is jurisdictional. Failure to file a valid petition or request within that fourteen day period is grounds for dismissal upon proper motion directed to jurisdiction. F.S. 120.54(4)(d) provides that: "Other substantially affected persons may join the proceeding as parties or intervenors on appropriate terms which will not substantially delay the proceedings."
The Department contends that since Janet Woe and Samuel J. Barr, M.D., came into the case via an amended petition filed November 18, 1977 and Jeannette R. by motion to intervene filed November 23, 1977, both substantially beyond the fourteen day jurisdictional period for the contest of a proposed rule, they are without standing. We agree.
Whether or not the above quoted portion of F.S. 120.54(4)(d) allowing other substantially affected person to join as parties or intervenors should be construed as permitting such joinder after expiration of the fourteen day jurisdictional period provided by paragraph (b) of the statute we need not here determine for the reason that obviously such joinder contemplates the existence of a valid proceeding. It was never intended by the legislature that such provision be construed as being a vehicle for the breathing of life or validity into an otherwise dead or invalid proceeding. Sub judice, as we have held, the original remaining petitioner, Susan A. (Alice P. having been dismissed) was without standing. She was the only party (other than Alice P.) who filed within the fourteen day jurisdictional period. Susan A., being without standing, that filing was a nullity. There was therefore no validly existing proceeding to which the other persons (or corporations) could become parties or intervenors. The Department's several motions to dismiss should have been granted.
We gratuitously observe that dismissal of a petition pursuant to F.S. 120.54(4) for failure to comply with the statutory jurisdictional requirement is not fatal to any rights of the challenger as to the proposed rule after its adoption because such dismissal for lack of jurisdiction has no affect upon the availability of a rule challenge pursuant to F.S. 120.56 after the rule has been adopted.
We have heretofore declined to hold the issues herein raised to have been rendered moot by the passage of time and the expiration of the fiscal year for which the allegedly impounded funds were appropriated because the controversy is "capable of repetition, yet evading review". (See Southern Pacific Terminal Co. v. ICC, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911); Roe v. Wade, 410 U.S. 113, 125, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) and U.S. v. New York Telephone Company, 434 U.S. 159, 98 S.Ct. 364, 54 L.Ed.2d 376.) However, the Department has now furnished us with a copy of the relevant portions of an issue of the Florida Administrative Weekly, dated December 15, 1978, revealing a notice that the Department has withdrawn "the proposed amendments to Rules 10C-7.38 and 10C-7.39 relating to Medicaid funding for abortions, which amendments were noticed in the October 14, 1977 issue of the Florida Administrative Weekly" (said proposed rules being those which are the subject matter of this proceeding). That information is attached as an exhibit to a Suggestion of Mootness. In view of the withdrawal of said proposed rules, whether they are "an invalid exercise of delegated legislative authority" (F.S. 120.54(4)(a)) is moot and the controversy here is not therefore now capable of repetition, yet evading review.
Having so resolved the case, it is unnecessary for us to decide whether a party claiming monetary benefits (as here) or damages, as distinguished from declaratory relief (as in Roe v. Wade, supra), is entitled to maintain the action anonymously or under a pseudonym.
The Department's motion to dismiss the Petition for Administrative Determination of Proposed Rules, as amended, should have *1054 been granted. The remaining issues raised by this proceeding are moot.
IT IS SO ORDERED.
SMITH and BOOTH, JJ., concur.
NOTES
[1] Neither did she meet the standard of Roe v. Wade because, as specifically recited by the author of that opinion, Roe was pregnant at the time the suit was filed.
[2] Janet Woe and Jeannette R. were both pregnant medicaid recipients at the time each sought to become a party. Barr's testimony established that he was "substantially affected" prior to, and at the time of, the filing of the amended petition.