# ALLIGATOR LAKE CHAIN HOMEOWNERS ASSOCIATION v THAYER, et al.

Case No. 84-4491

State of Florida, Division of Administrative Hearings

January 15, 1986

## APPEARANCES OF COUNSEL

**Virginia M. Hoover** for petitioner.

**Norman J. Smith** for applicant/respondent.

**B. J. Owens,** Assistant General Counsel, Department of Environmental Regulation, for respondent/DER.

## OPINION

P. MICHAEL RUFF, Hearing Officer.

### RECOMMENDED ORDER

Pursuant to notice this matter came on for hearing before P. Michael Ruff, duly designated Hearing Office on June 20, 1985 in Kissimmee, Florida.

This cause arose upon a Notice of Intent to issue a dredge and fill permit rendered by the Department of Environmental Regulation pursuant to Chapters 253 and 403, *Florida Statutes* for a project for which permitting was sought by the applicants, Melvin and Mary Thayer. The Thayers applied to the Department for a permit to remove an existing 32-foot section of wooden fence and install a chain-link fence which, as applied for, would not extend more than 32 feet waterward from the 64-foot mean sea level elevation of Alligator Lake, otherwise not to extend beyond the end of the existing wood fence, which would be removed. The proposed fence would be five feet high and would possess a gate at its landward end to make either side accessible so that the fence would not pose a barrier to pedestrian travel. The project site is located approximately 400 feet south of U. S. 441 and 192 adjacent to Alligator Lake, one mile west from Bay Lake in Osceola County, Florida. The agency made an initial determination that reasonable assurances had been provided the Department that the project would not cause a violation of Class III water quality standards nor diminish the biological resources of Alligator and adjacent waters. Additionally, it was initially determined that the proposed project would not create a navigational hazard or serious impediment to navigation. After issuance of the Notice of Intent the above-captioned Petitioner timely filed a petition protesting the grant of the permit which initiated this proceeding, pursuant to Section 120.57(1), *Florida Statutes* (1983).

The cause came on for hearing as noticed at which the Applicant/Respondent presented the testimony of Ed Edmunson, a biologist and environmental specialist with the South Florida Water Management District, who was also presented as the Respondent/DER's initial witness. Additionally, the Applicant/Respondent presented the testimony of Larry Walter, a professional engineer who was accepted as an expert witness in that field and Melvin Thayer, the coapplicant with Mary Thayer. The Respondents offered and had admitted into evidence

Exhibits 1 through 8, as well as Respondent's Composite Exhibit 2A, Parts 1 through 5 consisting of photographs of the project site which were also admitted into evidence. The Petitioners presented the testimony of Thomas Harris, Virginia Hoover, Geneva Cripe and Susanna Cripe Barber, landowners on and users of Alligator Lake, as well as Ed Moyer, a fisheries biologist with the Florida Game and Fresh Water Fish Commission. The Petitioners offered 13 Exhibits which were admitted into evidence with the exception of Petitioner's Exhibits 4, 6, 7 and 9 which are excluded on grounds of irrelevancy with regard to Petitioner's 6, 7 and 9 and hearsay with regard to Petitioner's Exhibit 4.

At the outset of the hearing, the Respondent/DER asserted and argued its motion to dismiss, belatedly filed the day prior to the hearing, wherein it seeks to dismiss the petition on grounds of lack of standing. That motion will be disposed of in the Conclusions of Law below. Additionally, at that juncture, certain members of the Petitioner Association, William H. Hoover, Virginia Hoover, Geneva Cripe and William Arpin, sought to participate as petitioners in their own right. The Respondents moved to strike their appearance as Petitioners or Petitioners-in-Intervention inasmuch as timely petitions or petitions in intervention had not been filed. This motion is granted inasmuch as no timely petitions by anyone other than the Petitioner/Association have been filed in this proceeding within the 14 day filing time for such petitions allowed by Rule 17-103.150, *Florida Administrative Code* and Rule 22i-6.10, *Florida Administrative Code* as to petitions in intervention.

At the conclusion of the hearings, the Petitioners announced their intention to order a transcript and the parties agreed upon a date two weeks after filing of the transcript for filing proposed findings of fact and conclusions of law, concomitantly waiving the recommended order time period embodied in Rule 28-5.402, *Florida Administrative Code.* Subsequent to the hearing the Petitioners requested an extension of time into September for ordering and filing of the transcript of the proceeding and, there being no objection, were allowed the extension. On October 15, 1985, the Hearing Officer was advised by the Petitioner that a transcript would not be forthcoming. Accordingly, this Recommended Order was entered without the benefit of a transcript of the proceedings. The parties ultimately elected not to file proposed findings of fact and conclusions of law.

The issues to be resolved in this proceeding concern whether, within the purview of Chapter 253 and 403, *Florida Statutes* as well as Rules 17-4.28 and 17-4.29, *Florida Administrative Code,* reasonable assur-

ances that water quality standards will not be violated by the subject project have been provided; whether the project will not be contrary to the public interest in terms of harm to natural resources or navigation, as more particularly delineated in Chapter 253, *Florida Statutes*.

## FINDINGS OF FACT

1. The Applicant/Respondents, Melvin and Mary Thayer have applied to the Department of Environmental Regulation (Department) for a "dredge and fill permit" seeking authorization to remove an existing 32-foot wooden fence and install in its place a chain-link fence, which as originally applied-for would not extend more than 32 feet waterward from the 74-foot mean sea level elevation of Alligator Lake as marked by the waterward end of the existing wooden fence. The fence proposed would be five feet high and would possess a gate at its landward end which would permit pedestrian passage in both directions around the near-shore area of the lake. The project site is located approximately 400 feet south of U. S. 441-192 and adjacent to Alligator Lake, lying one mile west from Bay Lake within Section 10, Township 26 South, Range 31 East in Osceola County, Florida. As clarified and amended prior to hearing, the application now requests the permit to authorize, instead, a 26-foot fence extending the distance waterward from the 64-foot mean sea level elevation.

2. The Department has permitting jurisdiction under Chapters 253 and 403, *Florida Statutes* as well as Chapter 17-4, *Florida Administrative Code*. There is no dispute that the Department has jurisdiction of the permitting of the subject fence inasmuch as the fence would be constructed waterward of the 64-foot mean sea level elevation or the "high pool" level of Alligator Lake in Class III waters of the state. Additionally, the area of the project waterward of the 64-foot mean sea level elevation lies on sovereign lands of the State of Florida under the jurisdiction of the Department of Natural Resources. That Department, as yet, has not issued a permit for use of sovereign land for the intended purpose as envisioned by Section 253.77, *Florida Statutes*.

3. Ed Edmunson was tendered by both Respondents as an expert witness and was accepted as to his expertise in biological assessment of dredge and fill construction projects. It was thus established that the construction and installation of the fence and removal of the existing fence would cause no Class III water quality violations. Additionally, it was established that no navigational impediment would result from the fence as presently proposed which only involves a 26-foot fence extending from the 64-foot mean sea level elevation waterward in a perpendicular direction from the shore and near-shore of Alligator Lake.

234

4. Parenthetically it should be noted that the original proposal involved extending the fence 32-feet waterward and then installing a right angle section parallel to the shoreline for an indeterminate distance. The right angle portion of the fence has been deleted from the permit application and the portion perpendicular to the shoreline has been amended from 32 feet down to 26 feet down from the 64-foot mean sea level elevation. In that connection, it was established by witness Walter, accepted as an expert in the field of engineering, that on January 7, 1985, the water line of Alligator Lake was at 62.4 feet mean sea level elevation and the end of the existing 32-foot wooden fence was 16 feet from the then existing waterline of the lake. If the water in the lake was at the 64 feet mean sea level elevation or "high pool" stage, which has occurred on the average of once every three years, the water at the end of the fence would still be only .9 feet in depth at the waterward extreme end of the proposed 26-foot fence. Indeed, it was established without contradiction by the Applicant, Melvin Thayer, that in the 17 or 18 years he has observed the project site, that only "seven or eight inches of water is the most depth he has seen at the end of the fence." Thus, the fence as proposed to be installed, will pose no impediment or hazard to the navigation of fishing boats, skiing boats or other craft, and, in that regard, a dock in close proximity to the site of the proposed fence extends approximately 90 feet waterward at the present time. In view of the Petitioner's other objection to the fence concerning their feared loss of access to walk around the near-shore area of the lake to visit friends and the like, the permit applicants have agreed to install a gate for public access anywhere specified by the Department along the extent of the proposed fence.

5. The testimony of Petitioner's witnesses, including a representative of the Game and Fresh Water Fish Commission, consists largely of objections to the precedent of permitting a private fence to be constructed in the waters of the state and on state water bodies, but no impediment to navigation has been established especially since the neighboring dock and numerous other docks around the shoreline of the lake extend waterward much farther than will the proposed fence. No degradation to water quality has been established to result from the proposed project. The fence has not been shown to be contrary to the public interest since it will not interfere with wildlife habitat or natural resources, nor impede navigation in any way, and was shown not to impede any public use of the lake or the near-shore area of the lake, in view of the access gate to be provided in the fence. In short, reasonable assurances have been provided that all permitting criteria within the

Department's jurisdiction at issue in this proceeding will be complied with, although a permit from the Department of Natural Resources authorizing use of the state lands involved has not been issued as yet.

## CONCLUSIONS OF LAW

The Division of Administrative Hearings has jurisdiction of the subject matter of and the parties to this proceeding pursuant to Section 120.57(1), *Florida Statutes* (1983).

Section 403.087, *Florida Statutes* (1983) provides:

(1) No stationary installation which will reasonably be expected to be a source of air or water pollution shall be operated, maintained, constructed, expanded, or modified without an appropriate and currently valid permit issued by the department unless exempted by department rule. . . .

Section 253.123, *Florida Statutes* (1983) concerns dredging and filling restrictions and provides pertinently as follows:

(3) The removal of sand, rock or earth from the navigable waters of the state and the submerged bottoms thereof by dredging, pumping, digging, or any other means shall not be permitted except in the following instances:

. . . . . . . . . .

(d) For other purposes when, but only when, the department has determined, after consideration of a biological survey and an ecological study and a hydrographic survey, if such hydrographic survey is required by the department, made by or under the supervision of the department, of the area from which such sand, rock or earth is proposed to be removed, that such surveys and study show that such removal will not interfere with the conservation of fish, marine and other wildlife, or other natural resources, to such an extend as to be contrary to the public interest, and will not result in the destruction of oyster beds, clam beds or marine productivity, including but not limited to, destruction of natural marine habitats, grass flats suitable as nursery or feeding grounds for marine life, and established marine soil suitable for producing plant growth of a type useful as nursery or feeding grounds for marine life or natural shoreline processes to such an extent as to be contrary to the public interests.

Pursuant to its permitting and environmental regulatory authority embodied in the above-cited provisions of Chapter 403, *Florida Statutes*, the Department has promulgated Rules 17-4.28 containing the criteria for granting dredge and fill permits such as that involved herein. Stated summarily, that rule provides that all dredging or filling

236

activities to be conducted in waters of the state as defined by Section 17-4.02(17), *Florida Administrative Code* require a permit prior to being undertaken. The applicant for dredge and fill permit must affirmatively provide reasonable assurance to the Department that the short-term and long-term effects of the activity proposed will not result in violations of the various water quality criteria and requirements embodied in Chapter 17-3, *Florida Administrative Code.* Alligator Lake is a "meandered" lake and is thus not only waters of the state, being Class III waters, but is also subject to the Department's jurisdiction under the above-cited provision of Chapter 253, *Florida Statutes.* The water quality criteria incorporated by reference in Rule 17-4.28 are embodied in Rule 17-3.121, *Florida Administrative Code.*

An applicant subject to the provisions of Section 253.123 must meet the criteria enunciated above and codified in Rule 17-4.29(6), *Florida Administrative Code,* which concerns dredging and filling projects and permit applications in waters over which the Department also has jurisdiction pursuant to Chapter 253, *Florida Statutes.* In summary form, that rule requires that an applicant affirmatively demonstrate that (a) the proposed activity will not interfere with the conservation of fish, marine and wildlife, or other natural resources to such an extent as to be contrary to public interest, (b) the proposed activity will not result in the destruction of oyster beds, clam beds, or marine productivity, and (c) the proposed activity will not create a navigational hazard, or serious impediment to navigation or substantially alter or impede the natural flow of the navigable waters, so as to be contrary to the public interest.

The allocation of burden of proof in a dredge and fill permit proceeding such as this has been enunciated by the First District Court of Appeals in *Florida Department of Transportation vs. J.W.C. Co., Inc.,* 396 So.2d 778 (Fla. 1st DCA 1981). Once an applicant has established a prima facie showing of entitlement to a requested permit, the burden shifts to those opposing the permit application, such as the Petitioners herein, to go forward with evidence to prove the truth of the facts asserted in their petition. If parties in opposition to a permit fail to present evidence or to carry the burden of proving the controverted facts they have asserted in a petition, then assuming that an applicant's preliminary prima facie showing warrants a finding that "reasonable assurance" has been demonstrated, then a permit must be approved. The Petitioners have raised as their objections to the granting of this permit their fears that water quality standards might indeed be violated, that an impediment to navigation and their free right to fish, water ski, and otherwise enjoy the lake, as well as the right of

access around the periphery of the lakeshore might be impeded by the fence. Additionally, the Petitioners object to what they fear is the bad precedent set by allowing a private landowner to place a fence on state-owned land.

The permit applicants and the Department, in view of the above Findings of Fact, have clearly adduced sufficient evidence to make a prima facie showing that no deleterious effects on water quality in these Class III waters will ensue by removal of the present fence and the installation of the proposed fence. They have additionally, amply demonstrated that no impediment or hindrance to navigation by members of the public will result by installation of the proposed fence, insofar as that relates to water skiers, fishermen, swimmers, or other users of the lake, and, in this regard, it was proven that the project as proposed will not be contrary to public interests as that concept is envisioned in the above-cited legal authority. Concerning the Petitioner's fear of the precedent setting aspect of allowing a private fence to be installed on sovereign lands, it was established that no similar applications to install such fences are presently pending, and furthermore, that an adjacent dock extends some 90 feet waterward into state waters and on state-owned lands in the area immediately adjacent to the proposed project. There are many other such docks already constructed in Alligator Lake which, incidentally, would pose substantially more impediments to navigation than would the subject fence which only extends into waters which at most reach less than a foot in depth when the lake is at high pool stage. In the face of the Applicant's and the Department's showing that no degradation of water quality nor impediment to navigation contrary to the public interest will ensue, the Petitioners have shown and adduced no evidence of any cumulative impacts which would be deleterious to water quality and navigation considerations, even if similar permit applications for similar projects were shown to be pending or in the offing, which they were not.

In short, the Petitioners have adduced no competent, substantial evidence to refute the prima facie showing by the permit applicants and the Department that reasonable assurances have been provided that the short-term and long-term effects of the activity proposed will not result in violations of the water quality criteria, standards, requirements and provisions of Chapter 17-3, *Florida Administrative Code*, as envisioned by Rule 17-4.28, *Florida Administrative Code*, and have neither contradicted the Applicant's and the Department's demonstration that the proposed activity will not interfere with the conservation of fish, wildlife and other natural resources, nor will create a navigational

238

hazard, a serious impediment to navigation, or substantially alter or impede the natural flow of the navigable waters involved so as to be contrary to the public interest. That being the case, and the Petitioners having failed to controvert the Applicant/Respondent's and the Department's proof in this regard, the requested permit should be approved. *J.W.C. Co., Inc., supra.* That approval should be conditioned upon the requirements of Section 253.77, *Florida Statutes,* being complied with by the applicants in that the proposed project must be granted a permit by the Department of Natural Resources for use of the sovereign state lands involved.

There remains to be addressed the Respondent/Department's Motion to Dismiss the Petitioner/Association for alleged lack of standing. That motion should be granted. In order for an association to have standing to initiate a 120.57(1) proceeding such as this, it must demonstrate that a substantial number of its members, although not necessarily a majority, are "substantially affected" by the proposed agency action, here, to grant the subject permit application. Secondly, the subject matter of the proceeding must be within the association's general scope of interest and activities. Here it was not established by the Petitioner/Association that its primary interest and activity involves protecting water quality in the lake, nor the public interest in unimpeded navigation, nor the protection of wildlife and other natural resources, nor any of the other environmental protection criteria enunciated in the above-cited legal authority. *Florida Homebuilder's Association vs. Department of Labor,* 412 So. 2d 351 (Fla. 1982).

The Petitioner/Association must show that a substantial number of its members are substantially affected if the permit applied for were granted. This must be done by the pleading and proof of particular facts sufficient to show that substantial affect or injury. *All Risk Corporation vs. the State, etc.,* 413 So.2d 1200 (Fla. 1st DCA 1982). The *All Risk* case requires that a party asserting standing, here the Petitioner/Association, must prove injury in fact, which has been interpreted as meaning that an injury has been sustained or an immediate danger of an injury caused by the activity to be permitted will result. See *Florida Department of Offender Rehabilitation vs. Jerry,* 353 So.2d 1230 (Fla. 1st DCA 1978), *cert. denied,* 359 So.2d 1215 (Fla. 1978). The injury must also be one different from that suffered by the general public. See *Grove Isle Ltd. vs. Bayshore Homeowners, et al.,* 418 So.2d 1046 (Fla. 1st DCA 1982). Further, it is the Petitioner party itself which must be the injured party, for it is this requirement "which gives a litigant a direct stake in the controversy and prevents the judicial power from becoming no more than a vehicle

for the vindication of value interests of concerned bystanders." *Jerry,
supra* at p. 1234. Here the Association has not alleged any injury, in
fact, substantial or otherwise which it itself might sustain if the
proposed project were permitted. Rather the petition alleges that
various of its members use the state waters involved for various
pursuits involving swimming, fishing, boating and other pleasurable,
recreational activities, however, none of those members are joined as
party petitioners along with the Petitioner/Association as envisioned
and required by the opinion in *Florida Homebuilders, supra.*

It was not pled nor proven that any real, immediate or substantial
injury will be suffered by any of its members, even had they been
joined in its petition as copetitioners, but rather Petitioner has asserted
speculative, conjectural interests in preserving the navigability and
recreational usage of Alligator Lake on behalf of many unnamed and
unspecified riparian landowners, none of whom joined in the petition.
Such interests, in addition to being speculative and conjectural, are the
same as those which might be asserted by any members of the general
public, and the substantial injury necessary to establish standing has
not been shown to be one different from that which might be suffered
by the general public at large.

In short, although the interest in preserving water quality, unim-
peded navigation and protection of natural resources and the like are
arguably within the zone of interests to be protected or regulated by
the Department under the purview of its authority under Chapters 253
and 403, *Florida Statutes*, as envisioned in the decision in *Agrico
Chemical Company vs. Department of Environmental Regulation,* 406
So.2d 478 (Fla. 1st DCA 1981), the Petitioner/Association itself has
shown no particular, substantial, immediate "injury-in-fact" which is
different from that which might be suffered by the general public.
Association members who are, for instance, landowners adjacent to the
project on Alligator Lake have not been joined as party/petitioners to
assert those interests in their own right. The relief sought by the
Petitioners has not been shown to be within the general scope of
interest and activity of the Petitioner/Association and of a type
appropriate for the association to assert and protect on behalf of its
members as a party in its own right. Thus, the Motion to Dismiss for
lack of standing asserted by the Department should be GRANTED.

Finally, the various landowners on Alligator Lake who sought to
participate as petitioners could not be allowed to do so since no timely
petitions were filed by these persons and the 14-day period for filing
petitions referenced in the above rule is jurisdictional. *State Depart-
ment of Health and Rehabilitative Services vs. Alice P.,* 367 So.2d 1045

240

(Fla. 1st DCA 1979). Neither can these persons be treated as intervenors since Rule 28-5.207 and 22i-6.10 provide that persons other than original parties who have a substantial interest in a proceeding may intervene if petitions for leave to intervene are filed at least five days before final hearing and in conformance with the petition requirements as set forth in Rule 28-5.201(2), *Florida Administrative Code*. No persons other than the Petitioner/Association filed petitions or sought leave to intervene in accordance with the time limitations prescribed in these rules, therefore they cannot be treated as intervenors. Despite their lack of entitlement to party status however, the various members of the public owning property on the lake or otherwise asserting an interest in this proceeding were allowed to testify. Their testimony has been considered in this context and appropriate weight ascribed to it. See Subsection 120.57(1)(b)4, *Florida Statutes*. In short, the Applicant/Respondents having affirmatively provided reasonable assurances of compliance with all relevant permitting criteria enunciated above, the requested permit should be approved. The permit should be granted conditioned on a showing by the Respondent/Applicants to the Department that appropriate authority has been granted for use of the state sovereign land involved by the Department of Natural Resources as envisioned by Section 253.77, *Florida Statutes*.

## RECOMMENDATION

Having considered the foregoing Findings of Fact, Conclusions of Law, the evidence of record and the pleadings and arguments of the parties, it is, therefore

RECOMMENDED:

That the application of Melvin and Mary Thayer for authority to remove an existing fence and to install a fence extending 26 feet waterward of the 64-foot mean sea level elevation of Alligator Lake with an attendant public access gate installed therein be GRANTED upon satisfaction of the above-stated condition.

DONE and ENTERED this 15th day of January, 1986 in Tallahassee, Florida.