340 So.2d 493 (1976)
Barton T. McLEAN, Appellant,
v.
Beverly A. McLEAN, Appellee.
Nos. Z-187, Z-245.
District Court of Appeal of Florida, First District.
December 3, 1976.
Richard O. Donovan, Coral Gables, and Susan Goldman, Miami, for appellant.
Fred W. Baggett, and Sam Spector, Tallahassee, for appellee.
SMITH, Judge.
By these consolidated appeals, Barton McLean complains of (1) the trial court's interlocutory order denying continuance of the final hearing on his petition for modification of the judgment awarding appellee, his former wife, custody of their young daughter, and (2) the trial court's final order, entered while the interlocutory appeal was pending, denying appellant's petition for modification of custody.
Following dissolution of the marriage in May 1973, the court entered a supplemental judgment August 20, 1973, awarding primary custody and control of the child to the appellee. More than a year later, on September 30, 1974, the appellant father petitioned for modification of the judgment to award him primary custody of the child on the ground that continued custody by appellee was inimical to the child's welfare. Then followed discovery on the issue and at least five successive schedulings of the hearing on the merits which was finally reset on June 17, 1975, for June 30. At that hearing, appellant sought yet another continuance on the ground that the deposition of an essential witness had not been obtained, due allegedly to the intervention of appellee. *494 The chancellor denied that motion and called on appellant to proceed with evidence on the merits of his modification petition. Appellant's counsel announced a purpose to seek interlocutory review of the order denying continuance and declined to go forward with proof. On July 24, appellee filed a motion to dismiss the modification petition, with a notice of hearing, and after hearing argument on July 31 the court denied the petition for modification nunc pro tunc June 30, 1975, for appellant's refusal to proceed on the merits.
The trial court acted well within the proper limits of his discretion in denying the continuance sought on the day of the final hearing. Appellant made no substantial showing that appellee had caused any witness to resist or evade service of process. The assertion that appellee had instructed witnesses not to cooperate was based largely on double hearsay. Appellant made no showing that his unavailing effort to subpoena the needed witness was all that could reasonably be required of him. He made no showing that the witness would or could testify to matters which could not otherwise be established. In fact, the deposition of that witness, obtained after the interlocutory appeal was taken but before the modification petition was denied, gave no significant corroboration of appellant's contentions on the merits. The court did not err in denying a further postponement of a final hearing already postponed several times over a period of nine months. Rule 1.460, R.C.P.; In re Gregory, 313 So.2d 735 (Fla. 1975); Williams v. Gunn, 279 So.2d 69 (Fla.App. 1st, 1973). The interlocutory appeal will therefore be dismissed for want of substantial merit. Rule 4.2 c, F.A.R.
When appellant's last motion for continuance was denied at the final hearing, appellant effectively elected to take his chances on interlocutory appeal rather than proceed on the merits. The question therefore arises whether his interlocutory appeal deprived the trial court of jurisdiction to deny his petition for his refusal to proceed with the proof. We are of the view that the trial court had authority to deny the petition on the ground stated notwithstanding the pendency of the interlocutory appeal. The interlocutory appeal did not operate as a supersedeas. Rather, it vested jurisdiction in this court in respect to the matter under review and prevented the trial court from taking any action in the case which would deprive this court of its review power. Willey v. W.J. Hoggson Corp., 89 Fla. 446, 105 So. 126 (1925). The trial court's final order on July 31 denying the modification petition did not affect this court's power to review the interlocutory order denying continuance on June 30. The effect of the order entered July 31 was simply to deny the petition subject to this court's determination of the prior and pending interlocutory appeal.
If we were now to hold that the continuance was improperly denied, the trial court's final order would of course fall. But if as we conceive the continuance was properly denied in the trial court's discretion, the chancellor's subsequent denial of the petition now becomes unqualifiedly effective by our dismissal of the interlocutory appeal. Although labelling the July 31 order as entered "nunc pro tunc" June 30 was ineffective, for the reasons stated in Chief Judge Boyer's dissent, that did not deprive the order of efficacy on July 31. If we were to hold otherwise, we would effectively grant appellant the continuance he groundlessly sought; and appellant, though he failed to demonstrate error in the chancellor's decision that the merits would be determined on June 30, 1975, would be restored 16 months later to a trial on the merits that he once abjured and now is ready for at long last. See Hirsch v. Hirsch, 309 So.2d 47, 50 (Fla.App. 3d, 1975):
"To permit a party to willfully ignore or violate a court order by interlocutory appeal without supersedeas would strip the trial court of its ability and power to enforce its orders pendente lite."
It has been held in other contexts that, pending an interlocutory appeal taken without supersedeas, the trial court is without jurisdiction finally to dispose of a case on the merits. De La Portilla v. De La Portilla, *495 304 So.2d 116, 118 (Fla. 1974). Whatever may be the precise meaning of that doctrine in contexts not before us now, the mischief attending its mechanical application in the present situation is, we think, evident. The true rule was stated most meaningfully for present purposes in the Willey decision, supra, on which De La Portilla was predicated:
"[E]ven though in the absence of a supersedeas the trial court had the power to permit or require other proceedings in the cause that would not tend to impair or interfere with the appellate jurisdiction and power of the Supreme Court, or to defeat the efficacy of the appellate proceedings already duly taken, yet the dismissal of the bill of complaint by the lower court was subject to the result of the interlocutory appeal theretofore duly taken, otherwise the trial court would by such dismissal finally determine the merits of the cause which is the only matter involved in the appeal taken and then pending in the Supreme Court.
"When the appellate court acquires jurisdiction of a cause, no order of the trial court can legally impair or interfere with the power of the appellate court to make its jurisdiction in the premises effective. An order of the trial court dismissing a bill of complaint, made after the appeal was duly taken, does not affect the jurisdiction of the appellate court. See Holland v. State, 15 Fla. 549. Should an interlocutory order appealed from be reversed, the decree and mandate of the appellate court is effectual to restore the dismissed case to the docket of the trial court. If an interlocutory order appealed from is affirmed, the dismissal of the cause in the trial court is not of material consequence." 89 Fla. at 452, 105 So. at 129.
The interlocutory appeal is DISMISSED. The final order denying appellant's petition for custody modification is AFFIRMED.
MILLS, J., concurs.
BOYER, C.J., dissents.
BOYER, Chief Judge (dissenting).
I respectfully dissent. As this case demonstrates, only chaos will result from simultaneous litigation of the same case in the trial court and the appellate court. Further, the fact that an extension of time may be gained by an appeal is no reason to deny relief by appeal if the sought review is timely and not frivolous.
As stated in the majority opinion, appellant challenges two orders of the trial court. First he attacks by interlocutory appeal the trial court order denying his motion for a continuance of final hearing on his petition for modification of supplemental judgment on award of child custody.[1] Second, he raises by direct appeal the correctness of the trial court's nunc pro tunc order denying his petition for modification which was rendered subsequent to the filing of the notice of interlocutory appeal seeking review of the denial of his motion for continuance.[2] The central issue in the interlocutory appeal is whether the trial court abused its discretion in denying the motion for *496 continuance while the main issue in the direct appeal relates to the propriety of the nunc pro tunc order.
The petition for modification was filed September 30, 1974. Thereafter, the petition was noticed for final hearing on four separate occasions. After the last such notice, appellant filed a motion for continuance which was granted by the trial court continuing the final hearing from June 20, 1975, to June 30, 1975.
On June 30, appellant submitted another motion for continuance which is the subject of the instant interlocutory appeal. The trial court was informed by appellant's counsel that the motion was based upon the unavailability of witnesses, specifically and most importantly, Mr. Barry Peterson, whose unavailability was allegedly caused by the intervention of appellee.[3] A copy of Mrs. Lyles' deposition, which was presented to the trial court but not considered because it had not been received by the Clerk of the Court and placed in the court file, contained testimony indicating why it appeared to be necessary to secure the testimony of Barry *497 Peterson.[4] The deposition of the Division of Family Services social worker, Donna Silverman, further revealed the apparent importance of Mr. Peterson's testimony relative to the issue of child custody.[5] The record which was available to the trial court indicates that several attempts were made to serve Mr. Peterson, but all such attempts were unsuccessful as of the date of the final hearing.[6]
As to the issues presented by the direct appeal; the Florida Supreme Court has recently held that "... where an appeal is duly taken whether with or without supersedeas, jurisdiction of the cause is transferred to the appellate court, thereby depriving the trial court of the power to finally dispose of the cause by dismissal or otherwise."[7] Quite obviously, the trial court's order of July 31, 1975 finally disposed of the case, notwithstanding the pendency of the interlocutory appeal. I am therefore of the view that at the time the trial judge entered his order of July 31, 1975 denying appellant's Petition for Modification after appellant had filed his notice of interlocutory appeal from the court's order denying his Motion for Continuance the trial court was without jurisdiction and that the case should be reversed for that reason and remanded for further proceedings on the merits.
I am further of the view that the nunc pro tunc order of July 31, 1975 should be reversed for still another reason. The purpose of nunc pro tunc orders is to correct clerical, as distinguished from judicial, errors.[8] However, "... if the proposed amendment is a mere afterthought, something not really intended at the time, and which formed no part of the judgment or order as originally intended and pronounced, it cannot after the expiration of a term be brought in by way of amendment nunc pro tunc or otherwise."[9] It is clear that the trial judge did not intend to correct a mere clerical error in his nunc pro tunc order, but rather sought to remedy a judicial oversight.[10]
Our sister court of the Second District has recently had occasion to consider a similar factual situation in DeBaun v. Michael, Fla.App.2d 1976, 333 So.2d 106, wherein it said:
"It has long been settled that the function of an entry nunc pro tunc is to correct the record to reflect a prior ruling made in fact but defectively recorded. This indeed is the underlying rationale of Rule 1.540(a), supra. However, where an order does not merely correct clerical errors or omissions, but actually modifies the substance of a prior ruling or of itself constitutes a ruling not previously made in fact, it should not be given retrospective effect." (333 So.2d at page 108. Citations omitted)
As to the interlocutory appeal, it appears to me that the learned trial judge again erred, under the peculiar circumstances of *498 this particular case, in refusing to grant appellant's continuance.
It is axiomatic that the best interests and welfare of a child are the primary concern in custody proceedings.[11] In dissolution proceedings and in custody proceedings the State has an interest apart and separate from the interest of the parties. In such proceedings, the general requirements for a continuance need not be strictly enforced.[12] It is clear, it seems to me, that the evidence available to the trial judge at the time he denied appellant's Motion for Continuance[13] clearly revealed the importance of the testimony of Barry Peterson who had, to say the least, been elusive. Bearing in mind that the welfare of the innocent child is the polestar of custody proceedings, every effort should have been made to assure the availability of all relevant evidence touching upon the then fitness of the respective parents as custodian of their child Tiffany.
I would reverse and remand for further proceedings on the merits.
NOTES
[1] A final judgment dissolving the marriage between Barton T. McLean and Beverly A. McLean was entered on May 14, 1973. Determination of custody of the parties' daughter, Tiffany, then age two, was deferred pending a home and background study by the State of Florida, Department of Family Services. A supplemental judgment was entered on August 17, 1973, in which both parties were found to be suitable and fit parents and custody was awarded to the mother, Mrs. McLean. On September 30, 1974, Mr. McLean filed a petition for modification of the custody provision.
[2] The record reveals that when the trial court orally denied appellant's motion for a continuance, appellant's counsel stated: "Okay, your Honor, at that point we would like to exercise our appellate rights.", to which the trial judge responded: "By my guest." The trial judge thereupon dictated certain matters into the record relative to his denial of the motion for a continuance concluding "But counsel for the plaintiff has indicated a desire to exercise appellate rights and the court will stay any further proceedings pending processing of such appellate procedures if plaintiff desires to pursue same. * * *" After an off-the-record discussion, the trial judge stated: "Strike out that part about anything stayed. Just leave  let whatever the effect is." He subsequently stated: "Alright, then put this in the record. The statement of the court staying further proceedings was intended no more than to recognize whatever would be the effect in the trial court of the steps toward an interlocutory appeal". Following a short exchange between counsel and the trial judge, the hearing was concluded. A written order denying the motion for continuance was entered on June 30, 1975, but was not recorded until July 23, 1975. A notice of interlocutory appeal seeking review of that order was filed on July 28, 1975. Prior to the filing of the notice of interlocutory appeal, viz: On July 24, 1975, the respondent Mrs. McLean, appellee here, filed in the trial court a Motion to Dismiss. On July 31, 1975, the trial judge entered the following "nunc pro tunc order":

"This cause came on for hearing on the motion of Beverly A. McLean to dismiss the petition for Barton T. McLean for Modification of the Supplemental Judgment pertaining to child custody, and the Court having considered same and having heard argument of counsel for the parties, and the Court being otherwise advised, it is
"ORDERED AND ADJUDGED:
"1. A hearing was scheduled on Mr. McLean's petition on July 30, 1975 at which time counsel for Mr. McLean filed a Motion for Continuance which was denied by the Court and an Order to that effect entered on said date. Counsel for Mr. McLean announced he would take an interlocutory appeal and would not go forward with proofs in support of the Petition for Modification.
"2. In view of the Court's denial of Motion for Continuance and the absence of any evidence in support of the petition, the Court should have entered a denial of the petition for modification, otherwise, the effect is to grant the continuance.
"3. Accordingly, the said Petition for Modification is denied, nunc pro tunc June 30, 1975.
"4. Ruling on petition for attorneys fees and costs and other relief, filed by Mrs. McLean, and any other procedures herein are deferred until disposition of appellate procedures now in progress.
* * *"
[3] Mr. McLean's motion for continuance seeking to have continued the hearing scheduled for Monday, June 30, 1975, alleges, inter alia, that due diligence had been exercised attempting to contact one Barry Peterson, whose testimony was alleged in the motion to be essential regarding the fitness of Beverly McLean as a mother and custodian of the parties' minor child. The motion alleged that Mr. Peterson had been deliberately avoiding service of process and that testimony taken of one Bobbi Lyles indicated that Mrs. McLean had instructed witnesses not to cooperate and to impair the service of subpoenas for depositions. Attached to the motion was an affidavit relating to numerous attempts to serve Barry Peterson. Bobbi Lyles deposed in her deposition which was taken June 19, 1975, and filed July 2, 1975, that in a conversation with one Barbara Acton, whose deposition was also taken, Mrs. McLean had instructed Barbara not to cooperate and had also instructed Mr. Lyles, when difficulties were being encountered in contacting him, "Don't make it easy for him".

The transcript of the proceedings at the hearing before the trial judge on June 30, 1975, reveals that appellant's attorney sought the continuance "occasioned by the unavailability of the witnesses" further urging "it is our contention that the unavailability of Mr. Barry Peterson (the unavailable witness) had been caused by the intervention of Beverly McLean." He further informed the court of the taking of depositions of Bobbi Lyles and Jimmy Lyles which depositions had been mailed by the court reporter to the Clerk of the Circuit Court in Tallahassee but had apparently been delayed in the mail and had not been filed. However, copies were in the possession of appellant's attorney and were offered in support of appellant's contention as to the relevancy of the testimony of the potential witness, Barry Peterson.
[4] In her answers to interrogatories which were filed January 8, 1970, Mrs. McLean made certain admissions which related to parental fitness.

Barton McLean's deposition taken November 18, 1974 and filed January 9, 1975, the deposition of Bobbi Lyles (sister of Mrs. McLean) taken June 19, 1975 and filed July 2, 1975, and the deposition of Jimmy Lyles taken June 19, 1975 and filed July 2, 1975 all tended to corroborate one another and contained testimony which was material to custody as well as appellant's request for continuance.
[5] The deposition of Donna Silverman, an employee of the Division of Family Services, was taken on January 20, 1975, and filed on April 11, 1975. Her testimony strongly suggested that Barry Peterson should be, or could be, a material witness. She also, in many details, corroborated the testimony of Barton McLean and Bobbi Lyles.
[6] See Footnote 3 above.
[7] De La Portilla v. De La Portilla, Sup.Ct.Fla. 1974, 304 So.2d 116, 118. See also Walker v. Senn, Fla.App. 1st 1976, 340 So.2d 975, opinion filed September 10, 1976, Case No. BB 28 not yet reported.
[8] 19 Fla.Jur., Judgments and Decrees, § 65.
[9] Sawyer v. State, Sup.Ct.Fla. 1927, 113 So. 736, 738.
[10] The recitations of the order, quoted in full in Footnote 2, supra, lead to no other conclusion.
[11] Brust v. Brust, Sup.Ct.Fla. 1972, 271 So.2d 142 and Dinkel v. Dinkel, Sup.Ct.Fla. 1975, 322 So.2d 22.
[12] 7 Fla.Jur., Continuances, Section 5.
[13] Please see Footnotes 2, 3, 4 and 5, supra.