348 So.2d 343 (1977)
GADSDEN STATE BANK, a Florida Banking Corporation, Petitioner,
v.
Gerald A. LEWIS, As Comptroller of Florida, and As Head of the Department of Banking and Finance of the State of Florida, and the Quincy State Bank, a Florida Banking Corporation, Respondents.
No. FF-227.
District Court of Appeal of Florida, First District.
June 30, 1977.
*344 David A. Barrett, Barrett, Boyd & Holder, Tallahassee, for petitioner.
James M. Barclay and George E. Lewis, II, Tallahassee, for respondents Lewis and Department of Banking and Finance; Alexander L. Hinson of Lines, Hinson & Lines, Quincy, for respondent Quincy State Bank.
SMITH, Judge.
Gadsden State Bank petitions for review of an order of the Department of Banking and Finance, entered by the Comptroller, denying Gadsden a hearing on its protest of The Quincy State Bank's application for authority to establish a branch bank near Gadsden's existing facility in Chattahoochee. Section 120.68, Florida Statutes (Supp. 1976). The Department and Quincy assert that Gadsden is not entitled to participation in a Section 120.57 hearing and that Gadsden seeks review of the wrong agency order or untimely seeks review of the right order.
Legislation effective January 1, 1977, authorizes the Department to approve establishment of branch banks for public convenience and necessity. Chapter 75-217, Laws of Florida, Section 659.06(1)(a)1, Florida Statutes (Supp. 1976).[1] By rule the Department has prescribed criteria for determining the public convenience and necessity for a proposed branch. Fla. Admin. *345 Code Rule 3C-13.07.[2] Those criteria, which are almost identical to statutory criteria for authority to establish a new bank,[3] include requirements that:
"(a) Public convenience and necessity will be served by the proposed branch.
"...
"(e) Local conditions assure reasonable promise of successful operation for the proposed branch, and for the existing banks or branches already established in such area."
In May 1976, anticipating the January 1977 effective date of the branch banking law, Quincy applied for authority to establish a branch bank within its home county at Chattahoochee. In June, Gadsden notified the Comptroller of its intention to protest and, following correspondence and submission of data in support of its protest, Gadsden filed a comprehensive memorandum of protest in September. In November the Comptroller wrote Quincy of the Department's intention to approve Quincy's application soon after January 1, subject to conditions not here pertinent, but did not notify Gadsden, whose representatives learned of the letter of intent from a newspaper. The Department declined to furnish Gadsden "an official copy of said order or letter of intention and an official statement pertaining thereto which would serve to delineate and explain the reasons for and basis of the Comptroller's order," explaining the Department was bound to confidentiality by the Supreme Court's decision in Lewis v. Bank of Pasco County, 346 So.2d 53 (Fla. 1976), 346 So.2d 53 (Fla. 1977). On December 9, Gadsden as protestant requested a formal hearing pursuant to Section 120.57(1), Florida Statutes (Supp. 1976), asserting it is a "substantially interested and substantially affected party in the matter." The Department replied it had taken "merely preliminary steps" concerning the proposed Quincy branch at Chattahoochee, that "no action which affects [Gadsden's] substantial interest has been determined by this agency," that a Section 120.57(1) hearing was accordingly denied, and:
"If and when [Gadsden's] substantial interests are determined, [its] rights under Chapter 120, F.S., would then attach."
By letter to Quincy dated January 3, 1977, but "issued" January 21, 1977, the Comptroller approved Quincy's branch banking application subject to FDIC approval, and so notified Gadsden and others. On January 13, Gadsden filed another written request for a Section 120.57(1) hearing on Quincy's application. Without acting on Gadsden's January 13 request or mentioning it, the Department on January 21 notified Quincy and Gadsden, among others interested, that
"persons whose substantial rights are affected have until February 10, 1977 to file petition for hearing. If no such hearing is petitioned, the order will be final on February 21, 1977."
On February 8, 1977, the Department by written order denied Gadsden's January 13 request for a hearing, holding Gadsden is not a party or a person substantially affected by the proceeding on Quincy's application. But in response to the Department's January 21 communication, Gadsden mailed on February 10 and filed on February 11 a renewed application for a formal APA *346 hearing. The Department denied that application by order on March 3, stating that Gadsden's interests are only those of a competing bank, and
"Gadsden has no standing and was not a proper party or a person whose substantial interests were determined by an agency. Section 120.57(1), Florida Statutes."
On March 18 Gadsden petitioned this Court for review of the Department's order denying it an APA hearing.
Section 120.57 provides:
"The provisions of this section shall apply in all proceedings in which the substantial interests of a party are determined by an agency. Unless waived by all parties subsection (1) shall apply whenever the proceeding involves a disputed issue of material fact. Unless otherwise agreed, subsection (2) shall apply in all other cases."[4]
The Department's position that a protesting competitor bank is not a "party" to another's application for a branch is untenable. A Department rule provides:
"Parties to proceedings before the department are designated as applicants, petitioners, complainants, defendants, respondents, protestants, or intervenors, according to the nature of the proceeding and the relationship of the respective parties." Fla. Admin. Code Rule 3-2.20 (emphasis added).
Another rule designates as "protestants" those who oppose the granting of an application, Fla. Admin. Code Rule 3-2.26, and still another authorizes protestants to make appearances and present evidence and argument at formal hearings. Fla. Admin. Code Rule 3-3.73. We are unimpressed by the Department's argument that, because it declined to conduct a formal hearing, there was no occasion for Gadsden to properly "appear" and thus become a party protestant. Gadsden was and is a party.
We disagree also, on two grounds, with the Department's argument that Gadsden is not entitled to participation in a Section 120.57(1) hearing because its "substantial interests" were not to be determined in proceedings on Quincy's application. First, while the potential competitive injury to Gadsden by a branch Quincy bank is not explicitly a matter of statutory concern, it was made so by the Department's rule requiring, as a condition to branch banking, that local conditions assure reasonable promise of successful operation for the proposed branch "and for the existing banks or branches already established in such area." Fla. Admin. Code Rule 3C-13.07(1)(e).[5] Second, a protesting party's right of participation in an APA hearing does not depend on showing its own substantial interests are to be determined. Section 120.57 provides a hearing under one of its subsections "in all proceedings in which the substantial interests of a party are determined." Quincy assuredly was such a party. The APA does not permit the implication that one whose interests are substantial enough to induce recognition as a party may be excluded from the hearing. Indeed, Section 120.57 provides that, "unless waived by all parties," formal proceedings are necessary when there is a disputed issue of material fact. Every party is entitled to participation in a Section 120.57 hearing determining one's substantial interests, and any party may timely invoke the right to a hearing even if the agency and the party whose substantial interests are to be determined agree to omit compliance with Section 120.57.[6]
Thus Gadsden is a party entitled to a Section 120.57 hearing because by agency *347 rule it was a person "entitled to participate in whole or in part in the proceeding, or whose substantial interests will be affected by proposed agency action, and who makes an appearance as a party." Section 120.52(10)(b), Florida Statutes (Supp. 1976). Gadsden is a party entitled to Section 120.68 judicial review because its interests, recognized by the agency, were "adversely affected" by the agency order. Section 120.68(1); City of Plant City v. Mayo, 337 So.2d 966, 970 (Fla. 1976). Contrast ASI, Inc. v. Florida Pub. Serv. Comm'n, 334 So.2d 594, 596 (Fla. 1976), in which the Supreme Court held the Public Service Commission properly denied a Section 120.57 hearing to a competitor of an applicant for a public transportation permit, on grounds the competitor "has no legally recognized interest in being free from competition" and the permit was issuable as a matter of right.
The Department and Quincy contend also that Gadsden has no standing here because it timely petitioned for review of the Department's order of March 3, 1977, denying Gadsden a hearing, but did not petition within 30 days to review the letter denying hearing on December 16, 1976, or to review the order of February 8, 1977, or the Department's final order of January 3, "issued" January 21, approving Quincy's application. We likewise reject those arguments.
Without the prior benefit of our McDonald decision,[7] the Department misconceived the APA's hearing provisions are applicable only after the agency acts. While that application of those provisions is a permissible one, Section 120.57(2)(a)1, public and private interest will frequently be better served by hearings before the agency decides. See McDonald, supra n. 3, 346 So.2d at 578, n. 5. Here, while processing Quincy's application to a favorable conclusion, the Department issued a series of lulling statements to Gadsden implying that, while Gadsden was presently denied a hearing, the requested hearing might one day be provided. The Department's letters of December 16, 1976 and January 21, 1977 effectively invited further applications for hearings. Had Gadsden's final application of February 11, 1977 been denied as repetitive of an earlier application earlier denied on the merits by the full order of February 8, interlocutory judicial review on the merits of the repetitive February 11 application might have been foreclosed. But the Department denied the renewed application on the merits by an expository order on March 3. The petition for judicial review was timely filed within 30 days thereafter. Fla. App. Rule 4.5c.
Ordinarily, without a more substantial showing of harm irremediable by review of final agency action on the pending issue, we would not favorably consider a petition for review of "preliminary, procedural, or intermediate agency action" such as the Department's order denying Gadsden a Section 120.57 hearing. The proper remedy for such erroneous action is a petition to review the Department's final action in the substantive matter before it  here, the Department's action on Quincy's application for branch banking authority. Yet, because of Gadsden's repeated but unavailing efforts to secure a hearing which the Department was bound to grant, and because the Department's January 21 order on Quincy's branch bank ambiguously linked its finality to the absence of an intervening hearing petition by one whose substantial rights are affected, we hold Gadsden's petition to review the Department's preliminary, procedural or intermediate action is an acceptable vehicle for our jurisdiction. The Department's final approval of Quincy's petition must be considered as subject to our disposition of the interlocutory petition.[8] Our disposition of Gadsden's interlocutory petition nullifies the Department's order approving Quincy's application.
The Department's order denying Gadsden participation in a Section 120.57 hearing is REVERSED and the cause is REMANDED to the Department for further proceedings.
BOYER, C.J., and McCORD, J., concur.
NOTES
[1] "Any bank heretofore or hereafter incorporated ... shall have one principal place of doing business ...; in addition, with the approval of the Department and upon such conditions as the department shall prescribe, including a satisfactory showing by the bank that public convenience and necessity will be served thereby, any bank may establish up to two branches per calendar year within the limits of the county in which the parent bank is located."
[2] In a related case, also decided today, the Department seeks to disassociate itself from its "Regulatory Standards for Approval of Branches" by argument that Rule 3C-13.07 does not refine the statutory standard of "public convenience and necessity" for establishing branches but merely guides the Department in ongoing supervision of established branches. We cannot subscribe to that construction of a rule having such obvious contrary meaning. Recognizing that the Department's experience and our intervening constructions of the APA may account for the Department's discomfort with the unintended consequences of its rules, we reaffirm that agencies must honor their own substantive rules until, pursuant to § 120.54, Fla. Stat. (Supp. 1976), they are amended or abrogated. Sec. 120.52(14); Price Wise Buying Group v. Nuzum, 343 So.2d 115 (Fla. 1st DCA 1977). Contrast United Tel. Co. of Fla. v. Mayo, 345 So.2d 648 (Fla. 1977) in which the Court approved agency departure, in a given case, from an agency rule of procedure.
[3] See § 659.03(2), Fla. Stat. (1975), quoted and discussed in McDonald v. Department of Banking and Finance, 346 So.2d 569 (Fla. 1st DCA 1977).
[4] Subsection (1) of § 120.57 provides formal proceedings and subsection (2) provides informal proceedings leading to final agency action.
[5] Before the 1974 APA was enacted, we recognized the standing of an existing and potentially competing bank to complain of the Comptroller's deviation from statutory standards affecting the authorization of banks. Sec. 659.56, Fla. Stat. (1975); National Bank of Tampa v. Green, 175 So.2d 545 (Fla. 1st DCA 1965), cert. den., 183 So.2d 215 (Fla. 1965).
[6] An agency may by rule confine party status to those whose participation is assured by the APA and "authorize limited forms of participation in agency proceedings for persons who are not eligible to become parties." Sec. 120.52(10)(c); City of Key West v. Askew, 324 So.2d 655, 659 (Fla. 1st DCA 1976).
[7] McDonald v. Dep't of Banking and Finance, supra n. 3.
[8] McLean v. McLean, 340 So.2d 493 (Fla. 1st DCA 1976); Waltham A. Condominium Ass'n v. Village Management, Inc., 330 So.2d 227 (Fla. 4th DCA 1976).