511 So.2d 1060 (1987)
BOCA RATON MAUSOLEUM, Inc., the College of Boca Raton, Frederick B. and Barbara R. Miner, Edward W. and Anne A. Pfaff, and R. Brady Osborne, Appellants,
v.
STATE of Florida, DEPARTMENT OF BANKING AND FINANCE, Division of Finance and Memorial Park of Boca Raton, Inc., Appellees.
No. BN-466.
District Court of Appeal of Florida, First District.
August 18, 1987.
*1061 Wade L. Hopping and Robert P. Smith, Jr., of Hopping, Boyd, Green & Sams, Tallahassee, for appellants.
Walter Wood, Deputy Gen. Counsel and Paul C. Stadler, Jr., Asst. Gen. Counsel, Tallahassee, for appellee State of Fla., Dept. of Banking and Finance, Div. of Finance.
James A. Minix, of Swann & Haddock, Miami, for appellee Memorial Park of Boca Raton, Inc.

ON MOTIONS FOR REHEARING AND CLARIFICATION
NIMMONS, Judge.
The following opinion is substituted in place of the original opinion filed May 14, *1062 1987. Except for the changes appearing in this opinion, the appellees' motions for rehearing and clarification are denied.
Appellants sought to obtain a formal hearing pursuant to Section 120.57(1), Florida Statutes, in order to protest the issuance of a license entitling appellee/Memorial Park of Boca Raton, Inc., [hereinafter "Memorial Park"] to operate a cemetery. The Department of Banking and Finance, Division of Finance, [hereinafter "Department"] entered a final order (adopting the hearing officer's recommended order granting appellees' motion to dismiss) dismissing with prejudice appellants' petition for hearing finding that appellants had not alleged facts sufficient to give them standing to challenge the licensure.[1] Appellants appeal from that final order of dismissal.
Inasmuch as the administrative proceeding was terminated below at the pleading stage, the facts herein summarized are those alleged in the appellants' amended petition. Boca Raton Mausoleum, Inc., [hereinafter "Mausoleum"] is a supplier of mausoleum crypts and other services in an area which overlaps the prospective area to be served by Memorial Park. Mausoleum alleges that it will suffer reduced sales which will affect the amount of contributions to its perpetual fund for the care and maintenance of its facility. The College of Boca Raton is adjacent to the proposed cemetery and alleges that it will be affected by traffic congestion and the creation of an atmosphere which is not conducive to higher education. The Pfaffs and the Miners are two couples who have purchased preneed burial services from Mausoleum and who claim they will be affected by Mausoleum's reduction in sales and a consequent reduction in contributions to its perpetual fund. Finally, R. Brady Osborne, a taxpayer in the community residing near Mausoleum's facility, alleges that he will be emotionally distressed if Mausoleum has reduced sales leading to reduced contributions to its perpetual fund.
The recommended order, which was adopted by the Department as its final order, stated in part:
Petitioners each having failed to allege a statute or rule which gives them standing to initiate this proceeding, having failed to allege any substantial interest that will be affected by the proposed agency action, having failed to allege that they are within the zone of interest intended to be protected by the regulatory statutes and rules, having failed to allege any injury in fact ... it is, therefore,
ORDERED that [Memorial Park's] Motion to Dismiss is .. . hereby granted... .
Appellants assert on appeal that they are entitled to a 120.57 hearing because they have a substantial interest in the outcome of the proceeding and because they are entitled to participate based upon the Department's own rules.
In the seminal case of Agrico Chemical Company v. Department of Environmental Regulation, 406 So.2d 478 (Fla. 2d DCA 1981), the court stated:
The portion of the Administrative Procedure Act defining "party" which is applicable to this appeal reads as follows:[2]
(10) `Party' means:
... .
(b) Any other person who, as a matter of constitutional right, provision of statute, or provision of agency regulation, is entitled to participate in whole or in part in the proceeding, or whose substantial interests will be affected by proposed agency action, and who makes an appearance as a party.
* * * * * *
We believe that before one can be considered to have a substantial interest in the outcome of the proceeding he must show 1) that he will suffer injury in fact which is of sufficient immediacy to entitle him to a section 120.57 hearing, and 2) that his substantial injury is of a type *1063 or nature which the proceeding is designed to protect.
Id. at 481, 482.
As to each appellant in the instant case, we must determine whether the injury alleged is an injury-in-fact of sufficient immediacy to entitle that appellant to a hearing, and whether the injury is of a type or nature which proceedings pursuant to The Florida Cemetery Act, Chapter 497, Florida Statutes (1985), are designed to protect.
Boca Raton Mausoleum, Inc., alleges that it will be injured by reduced sales of burial spaces which will in turn reduce the amount in its perpetual fund.[3] The hearing officer and the Department rejected this injury as too speculative. We disagree.
There are few Florida cases discussing injury-in-fact in a permitting context. However, similar principles apply in a rule challenge proceeding. See e.g. Farmworkers Rights Organization v. Department of Health and Rehabilitative Services, 417 So.2d 753 (Fla. 1st DCA 1982). In Florida Department of Offender Rehabilitation v. Jerry, 353 So.2d 1230 (Fla. 1st DCA 1978), this court rejected the alleged injury-in-fact as too speculative where a prisoner challenged a disciplinary rule which might affect his gain time. The disciplinary rule only came into effect if the prisoner himself conducted himself improperly. This court held:
[W]e will not presume that Jerry, having once committed an assault, will do so again. To so presume would result only in illusory speculation which is hardly supportive of issues of `sufficient immediacy and reality' necessary to confer standing.
Id. at 1236. In the instant case, it is the agency action itself which will cause the injury. There is no contingency factor alleged or apparent as in Jerry. Mausoleum has alleged that if the permit to operate a competing cemetery is granted, it will suffer a loss of sales and a reduction in its perpetual fund. This loss is not dependent upon any intervening factors.
Our recent holding in Village Park Mobile Home Association, Inc. v. State of Florida, Department of Business Regulation, Division of Florida Land Sales, Condominiums and Mobile Homes, 506 So.2d 426 (Fla. 1st DCA 1987), is instructive. In that case, we held the alleged injury-in-fact to be insufficient. The parties alleged that because the agency approved a prospectus for the mobile home park, future rents and costs would increase causing current owners' properties to be less valuable. However, the prospectus merely disclosed the method by which rents and costs could be raised in the future and had no substantive effect on rents or services. In fact, other provisions of law protected those mobile home owners from unreasonable rent hikes or curtailment of services. In Village Park, it would be speculative as to whether the landlord would actually raise rental fees. In that case, as in Jerry, the injury was contingent upon action of a third party.
Ordinarily, a party in the position of Mausoleum would be required to prove the requisite injury-in-fact as a result of the new cemetery, and such is a matter which we believe should not be resolved without a fact-finding proceeding. See Sullivan v. Northwest Florida Water Management District, 490 So.2d 140, 142 (Fla. 1st DCA 1986). However, because of our holding as to this appellant's alternative ground for establishing a right of participation (as discussed infra), no fact-finding proceeding will be necessary.
*1064 The second prong of the substantial interest test is whether the type of injury pled is that which proceedings pursuant to The Cemetery Act are intended to protect. The main point of contention is that the injury alleged is purely economic and therefore not the type of injury that will entitle Mausoleum to participate in Memorial Park's permitting process. We find that in the instant case the injury alleged is within those interests with which The Cemetery Act is concerned.
The general rule in Florida has been expressed as follows:
[I]n licensing or permitting proceedings a claim of standing by third parties based solely upon economic interest is not sufficient unless the permitting or licensing statute itself contemplates consideration of such interests.
Florida Medical Association v. Department of Professional Regulation, 426 So.2d 1112, 1118 (Fla. 1st DCA 1983). See also Florida Medical Center v. Department of Health and Rehabilitative Services, 484 So.2d 1292, 1294 (Fla. 1st DCA 1986). A thorough review of the permitting statute and the Department's administrative rules demonstrate that reduced sales resulting in fewer contributions to the perpetual fund of Mausoleum is the type of injury contemplated by the Florida Cemetery Act.
Section 497.002 of the Act provides:
497.002 Purpose.  The Legislature recognizes that purchasers of preneed burial rights or cemetery merchandise may suffer serious economic harm if purchase money is not set aside for future use as intended by the purchaser and that the failure to maintain cemetery grounds properly may cause significant emotional distress. Therefore, it is necessary in the interest of the public welfare to regulate cemetery companies in the state. However, restrictions shall be imposed only to the extent necessary to protect the public from significant or discernible harm and not in a manner which will unreasonably affect the competitive market.
Further, Section 497.006(3), provides:
(3) The Department shall determine the need for a new cemetery in the community by considering the adequacy of existing facilities; and the relationship between population growth, death rate, and ratio of burials to deaths. In order to promote competition, the department may waive the criteria of this subsection so that each county may have at least six cemeteries operated by different licensees.
In our view, the above provisions describe a zone of interest which encompasses the impact a new licensee will have on existing facilities, at least where operation of the new license will "overlap" that of the existing facility and effect a reduction in sales and negatively impact the existing facility's perpetual fund. The Department's own rules appear to be consistent with a consideration of these interests.[4]
The instant permitting statute is materially distinguishable from that which was considered in Shared Services, Inc. v. Department of Health and Rehabilitative Services, 426 So.2d 56 (Fla. 1st DCA 1983). There this Court held that economic interests were not within the zone intended to be protected by proceedings pursuant to the licensing statute involved in this case. *1065 The licensing statute (Section 402.25) and administrative rules involved in Shared Services required the agency to issue a license as a ministerial function once certain information was provided the agency. In the present case, the unambiguous language of The Cemetery Act and the administrative rules construing it place with the Department an evaluative function that is more than merely ministerial. Whereas the proceedings in Shared Services could not have protected the petitioner from economic injury, in the present case, such injury must be considered by the Department.
Appellants have analogized The Cemetery Act to certain sections of Chapter 381, Florida Statutes, which deal with issuance of certificates of need to health care providers. We refrain from making such a comparison or depending on any similarity between particular sections in Chapter 381 and the subject Act. The interests implicated in the certificate of need process are far different from those implicated in the current permitting process. For example, cost containment, a controlling purpose for the certificate of need process, is not part of the legislative purpose behind The Cemetery Act. See Morton F. Plant Hospital Association, Inc. v. Department of Health and Rehabilitative Services, 491 So.2d 586 (Fla. 1st DCA 1986).
Appellant Mausoleum asserts another ground for granting it participation in Memorial Park's permitting process; namely, that the Department's rules create such a right.
We have held that, pursuant to Section 120.52(11)(b) & (c), Florida Statutes (1976), under some circumstances an agency rule can create a right of participation. In Florida Medical Center v. Department of Health and Rehabilitative Services, 484 So.2d 1292 (Fla. 1st DCA 1986), we clarified the limits of an agency's power to determine a right of participation of a class of persons by rule:
Although an agency's rule may not serve to restrict standing to one who would otherwise be determined to be a substantially interested party for purposes of being accorded a hearing under section 120.57(1), an agency's rule, such as these above, may, consistent with the regulatory statutory purpose, define or identify those persons who have a right to party status. (emphasis supplied)
Id. at 1294. Sections 120.52(11)(b) & (c), Florida Statutes (1985), allow an agency to expand or contract the right of participation only in a manner consistent with the regulatory statutory purpose.
In the instant case, appellants assert that this court in Gadsden State Bank v. Lewis, 348 So.2d 343 (Fla. 1st DCA 1977), has already construed the involved regulations as allowing participation of any party filing a protest. In that case, this court ruled that a competitor bank had standing both by rule of the agency and by having a substantial interest in the agency action. Id. at 346. That case did not hold, as appellants argue, that the subject administrative rules[5] create standing for any person who files a petition protesting agency action. Rather, it held that where the competing bank had a substantial interest in the case, the Department's rule, which defined the term "party" to include a person filing a protest, included a particular competing bank. This court was not faced in that case with a party whose participation in the agency proceedings would fall outside of the "regulatory statutory purpose" of that licensing statute. As to Mausoleum, we are again not faced with that question. Mausoleum has alleged an injury of a type or nature which proceedings pursuant to The Cemetery Act are designed to protect. Therefore, as was the case in Gadsden, this party has a right of participation by virtue of the agency rule.
As to The College of Boca Raton, we find nothing in either The Cemetery Act or the Department's rules which indicates that traffic congestion or an "atmosphere not conducive to higher education" is the type of injury which The Cemetery Act is *1066 designed to protect. In addition, we find these kinds of injuries to be far outside of the regulatory statutory purpose of The Act and therefore find that the Department's rules do not create a right of participation for the College.[6] The order of dismissal was therefore appropriate as to The College of Boca Raton.
The Miners and the Pfaffs, who have purchased crypts from Mausoleum, allege that competition from a new provider will reduce sales to Mausoleum and therefore cause reduced contributions to the perpetual fund. These appellants allege the same injury alleged by Mausoleum. In light of the Department's rules, which provide for participation by parties filing protests[7], we do not determine whether these appellants have alleged an injury-in-fact of sufficient immediacy, but find that the type of injury alleged is sufficiently within the regulatory statutory purpose to entitle these appellants to party status by virtue of the Department's rules.[8]Gadsden, supra. The Department's rules "define or identify those persons who have a right to party status" within the regulatory statutory purpose. Florida Medical Center, 484 So.2d at 1294. The mere failure of an injury to be of sufficient immediacy will not defeat standing where the agency has adopted rules allowing the party to participate.
As to Brady Osborne, the taxpayer in the community, we do not interpret The Cemetery Act as entitling anyone from the community to participate in the proceedings merely because they are worried about the effect a cemetery will have on the community. That is more properly a concern of local zoning authorities. See, e.g., Suwannee River Area Council Boy Scouts of America v. State of Florida, Department of Community Affairs, 384 So.2d 1369, 1374 (Fla. 1st DCA 1980). We also do not find that participation in these proceedings by a person who has the same general concerns as any member of the community is within the regulatory statutory purpose of The Act. Therefore, the Department's rules are not interpreted as creating a right of participation for this party.
We find appellants' other points have no merit. The order appealed is REVERSED in part and AFFIRMED in part, and this cause is REMANDED for further proceedings consistent with this opinion.
WENTWORTH and WIGGINTON, JJ., concur.
NOTES
[1] An initial petition was dismissed with leave to amend.
[2] Section 120.52(10), Florida Statutes (1981). [Footnote added.]
[3] Mausoleum is not a licensed facility (being exempt from licensure under Section 497.003(1)), but nevertheless alleges that it has an established perpetual fund. Under Section 497.021, Florida Statutes, a perpetual fund must be established for the permanent care and maintenance of the cemetery. Although Mausoleum is an exempt facility and therefore not required by law to establish a perpetual fund, it has established such a fund for the maintenance of its facility. In terms of its allegation of injury-in-fact, whether the fund was established as a requirement of Chapter 497 or merely as the actual means of providing for permanent care and maintenance of the facility is immaterial. The petition sufficiently alleges that if the new facility is permitted, Mausoleum's ability to permanently maintain and care for its existing facility will be affected.
[4] Rule 3D-30.015(4), Florida Administrative Code, states in part:

(4) Criteria for licensing a new cemetery.
(a) In making its determination as to the need for an additional cemetery company for the general benefit of the public, the Department shall not increase the available inventory of burial spaces beyond the expected need for a period of 30 years from the date of application.
(b) In the investigation to determine need for a new cemetery the Department shall consider the following criteria:
* * * * * *
2. After the community area is determined, the Department shall consider the adequacy of existing facilities by obtaining from all profit, non-profit, religious, and municipal cemeteries that would also derive the majority of their sales from the same community as the applicant, the number of burial spaces available in ground burials, lawn crypts, mausoleums, including contemplated mausoleum structures in which sales have been made... .
[5] Rules 3-2.20, 3-2.26, & 3-3.73, Florida Administrative Code (1975). With the exception of Rule 3-3.73 which has recently been repealed, these are the same rules on which appellants rely to assert standing by rule.
[6] There has been no rule challenge in this case. In our view, the rules are only intended to create standing to the limits of the regulatory statutory purpose.
[7] See footnote 4, supra.
[8] We note that "substantial interest" and "regulatory statutory purpose" are not entirely identical in all cases, although a substantial interest will always be within the regulatory statutory purpose.