## RUDLOE, et al. v DEPARTMENT OF ENVIRONMENTAL REGULATION

Case No. 88-3421F

State of Florida, Division of Administrative Hearings

November 8, 1988

### APPEARANCES OF COUNSEL

**Charles A. McMurry,** for petitioners.
**Carol A. Forthman,** for respondent.

### OPINION OF THE COURT

ROBERT T. BENTON, II., Hearing Officer.

### FINAL ORDER

This matter came on for final hearing in Tallahassee, Florida, before

Robert T. Benton, II, Hearing Officer of the Division of Administrative Hearings, on September 14, 1988. Petitioner's proposed recommended (sic) order and the proposed final order of State of Florida Department of Environmental Regulation, were filed on October 10, 1988. The parties are represented by counsel.

By motion for fees and costs, petitioners assert entitlement to recover costs and fees from the Department of Environmental Regulation (DER) under Section 57.111, Florida Statutes (1987) and Rule 22I-6.035, Florida Administrative Code. As objectors to a dredge and fill permit DER proposed to grant, petitioners participated in formal administrative proceedings that eventuated in a final order denying the permit application. *Jack J. Rudloe and Gulf Specimen Company, Inc. v Dickerson Bayshore, Inc. and State of Florida, Department of Environmental Regulation,* 30 Fla. Supp.2d 191 (DOAH 1988).

## ISSUES

Whether a small business party who petitioned for a formal hearing in response to DER's notice of intent to grant a permit is entitled to recover costs and fees incurred in contesting the application, when DER denies the application after a formal hearing? Whether DER's initial intent to grant was substantially justified?

The parties' stipulation and the record made in the underlying permit application, No. 87-3175, are the basis for the following

## FINDINGS OF FACT

Dickerson Bayshore, Inc. (DBI) filed an application for a dredge and fill permit authorizing construction of a marina on the shore of Dickerson Bay in Wakulla County. As required by DER rule, DBI published notice that it had applied for the permit.

On various grounds, DER initially issued an intent to deny DBI's application. After DBI modified the application to meet DER's objections, DER issued an intent to grant the permit.

Gulf Specimen Company, Inc. (GUlf) is a small business party, within the meaning of Section 57.111(3)(d), Florida Statutes (1987), and the parties have so stipulated.

Because petitioner Rudloe had written DER (probably on Gulf's stationery) requesting that DER do so, DER sent petitioners a copy of its notice of intent to grant. In the notice, DER proposed to grant DBI's application on conditions that included installation of a "sewage pumpout facility," enforcing prohibitions against sewage discharge and "live-aboard vessels" (later modified to forbid only "non-transient" live-aboards) and hiring a dock master.

204

Petitioners' original response to DER's notice of intent to grant is not in evidence in the present case and did not reach the Division file in Case No. 87-3175. The amendment to notice of objection, which DER referred to the Division of Administrative Hearings pursuant to Section 120.57(1)(3)b., Florida Statutes (1987), alleges that Gulf and Rudloe

> have substantial economic interests in the continued environmental health and productivity of the bay and surrounding waters. Petitioner and his company collect marine animals and plants there for scientific and educational purposes and conduct field trips for schools; all of which provides the major source of [their] income.

Petitioners also alleged that "Dickerson Bay serves as one of the major sources of marine organisms marketed by Gulf Specimen Company, as well as providing sea water used in the tanks for cultivating marine organisms."

DBI filed a motion to dismiss or in the alternative for more definite statement on August 28, 1987, addressed to petitioners' amendment to notice of objection. On September 21, 1987, the day before this motion was denied, petitioner filed a verified second amended petition, invoking Section 403.412(5), Florida Statutes (1987).

In the course of preparation for the formal hearing, DER evidently reassessed the impact the proposed marina might have on oysters in the vicinity, with the result that, at the time the parties filed their prehearing stipulation, "DER again indicated an intention to deny DBI's application . . . this time on account of the shellfish in the area." *Jack J. Rudloe and Gulf Specimen Company, Inc. v Dickerson Bayshore, Inc. and State of Florida, Department of Environmental Regulation,* No. 87-3175 at p. 2 (RO; April 25, 1988), adopted by final order entered June 9, 1988. See 30 Fla. Supp. 2d 191 at 192 (DOAH, 1988).

A week later, however, DER filed a notice of change in position stating that it supported DBI's permit application. But, after the formal hearing, DER adopted the recommended order's conclusion that DBI had "failed to give reasonable assurance that the proposed marina would not violate fecal coliform standards in Class II waters," at 53, waters ordinarily approved for shellfish harvesting.

Among the findings of fact on which this legal conclusion is predicated are the following:

74. In determining whether to open waters for the harvesting of shellfish, DNR makes its decision by

identifying actual [or] potential pollution sources that may be close enough to shellfish harvesting waters to render them unsafe for human consumption; number two, the hydrographics of the area, to determine the distribution and transport of those pollution sources; and then the sampling program. (T. 549)

Of course, sampling could not be determinative if the pollution source were potential, instead of actual. Before a marina opens, the precise amounts of pollutants it will add to the water are, to some extent, a matter of conjecture.

75. Planned restrooms and pumpout facility notwithstanding, uncertainty exists in the present case, as well. (T. 807) "Transient" live aboards are contemplated. The harbor master is to require boats capable of discharging their heads to lock through hull discharge valves. (Evidence at hearing dispelled ambiguity in the language proposed as a permit condition: boats are not to be barred from the marina just because their heads can be made to discharge to surrounding waters.) But the harbor master will not be present around the clock, to ensure that boaters leave their boats on stormy nights for the public restrooms, or be able to guarantee that the heads stay locked.

76. The ameliorative influence of restrooms and pumpout facility is also problematic. As Mr. Crum observed,

[I]t is going to be a lot of problems, it's not going to be that you are going to put a dockmaster there or a harbor master and have this thing converted overnight, because these people have been doing it all their lives (T. 238)

Some boat owners would undoubtedly choose to remain at the municipal dock free of charge, rather than rent a slip at a new marina. The plan is that the harbor master would help bring order at the municipal dock, too, by enforcing ordinances, not yet adopted. But it is not clear how well this would work.

77. The fecal coliform standard DER water quality rules lay down for Class II waters is precisely the same standard DNR applies in approving waters for shellfish harvesting. In evaluating DBI's application, both DER and DNR must assess the risk of contamination in Class II waters now approved for shellfish harvesting. Foreseeable conditions, if the marina is built, include increase fecal coliform loading 1700 feet away in waters where high background levels have persisted for years.

Other issues litigated at the formal hearing included whether petro-

206

leum, bottom paint, and other refuse would lead to violations of DER's biological integrity, cadmium, copper or dissolved oxygen standards, and whether the project was contrary to the public interest because of likely effects on turtles and wood storks.

In taking its last position before the hearing began, DER presumably made the judgment that restrooms, a pumpout facility, and a rule that heads be locked when boats were docked provided reasonable assurance that the marina would not contribute fecal coliform, at least in amounts which, when added to ambient levels, would violate standards outside an area "reasonably contiguous" to the marina. At the time DER furnished Gulf a copy of its first notice of intent to grant, however, DER had also proposed a ban on all live-aboards.

At hearing, Mr. Rudloe proved that he made recreational, as well as commercial use of the waters of Dickerson Bay. Pertinent findings of fact in the recommended order include:

4. Petitioner Jack Rudloe and his wife, Dr. Ann I.M. Rudloe, live on Dickerson Bay, north of the site proposed for the marina. The Rudloes use the bay for recreation. In the laboratory that they and the corporate petitioner operate, tanks house specimens of marina life, many ultimately bound for use in research on such questions as the toxicity of oil drilling muds.

5. Pollution in Dickerson Bay might contaminate the water in petitioners' uptake lines and holding tanks; they have found no practical water to filter the bay water. Even if petitioners' specimens survived contamination, the effects of contamination could render mysid shrimp and other organisms useless for the experimental purposes for which petitioners sell them. A good fraction of the specimens come from Dickerson Bay, to begin with.

Gulf's interest in the disposition of DBI's application differed in kind and degree from the interest of members of the public generally.

Gulf and the individual petitioner jointly incurred attorney's fees in excess of $15,000. The evidence did now show whether petitioner Rudloe, as an individual, qualified as a small business party. No appeal was taken from DER's order in Case No. 87-3175.

## CONCLUSIONS OF LAW

In accordance with Sections 57.111 and 120.57(1), Florida Statutes (1987) and Rule 22I-6.035, Florida Administrative Code, the Division of Administrative Hearings has jurisdiction of proceedings like these initiated pursuant to the Florida Equal Access to Justice Act. Section 57.111(4)(b)1., Florida Statutes. The petition was filed on July 12,

1988, well within 60 days of entry of DER's final order on June 9, 1988. Section 57.111(4)(b)2., Florida Statutes (1987); Rule 22I-6.035, Florida Administrative Code.

Gulf cannot prevail unless it can establish that it qualifies as a "prevailing small business party . . . [in a] proceeding pursuant to Chapter 120 initiated by a state agency." Section 57.111(4)(a), Florida Statutes (1987). In appropriate cases, agencies must bear a small business party's costs and fees, up to a maximum of $15,000, unless the agency can demonstrate that "the actions of the agency were substantially justified or special circumstances exist which would make the award unjust." Section 57.111(4)(a), Florida Statutes (1987). The agency has the burden to show substantial justification or special circumstances. *Anthony Gentele, O.D. v Department of Professional Regulation, Board of Optometry,* No. 85-3857F (DOAH; June 20, 1986) aff'd 513 SO.2d 672 (Fla. 1st DCA 1987)

### Initiated By A State Agency

Although DER took no action before DBI filed its application for permit, the statute defines "initiated by a state agency" to include situation in which an agency is

> required by law or rule to advise a small business party of a clear point of entry after some recognizable event in the investigatory or other free form proceeding of the agency.

Section 57.111(3)(b), Florida Statutes (1987)

DER's issuance of its intent to deny was a "recognizable event in the investigatory or other free-form proceeding of the agency," Section 57.111(3)(b), Florida Statutes (1987), after which DER advised Gulf, a small business party, of "a clear point of entry." Section 57.111(3)(b), Florida Statutes (1987).

DER contends that the proceeding in which Gulf prevailed was not "initiated by a state agency," Section 57.111(4)(a), Florida Statutes (1987), because DER was not required by law to advise Gulf of a clear point of entry. DER asserts that the agency only furnished Gulf notice of the intent to grant because Gulf had requested notice, in accordance with Section 120.60(3), Florida Statutes (1987), as any member of the public might have done; and cites *Booker Creek Preservation, Inc and Manasota 88, Inc. v Agrico Chemical Company and State of Florida Department of Environmental Regulation,* No. 87-3007F (DOAH; Dec. 16, 1987), for the proposition that third party objectors, not DER, are the initiating parties in cases like the present one.

208

### Booker Creek Distinguished

In the *Booker Creek* case, petitioners objecting to DER's intended issuance of a dredge and fill permit, "relied upon Sections 120.57(1) and 403.412(5)" when they filed a petition with DER initiating formal administrative proceedings on the permit application. Because the applicant abandoned the application before hearing, and did so without the objectors' having obtained a favorable judgment, order or settlement, petitioners were held not to be "prevailing small business part[ies]."

An alternative basis for decision in the *Booker Creek* case was that the objecting "Petitioners 'initiated' Case Number 86-3618 [the underlying substantial interest case]," at page 7, not the agency. Section 403.412(5), Florida Statutes (1987) allows participation in certain permitting proceedings even by parties who cannot demonstrate that issuance of the permit would affect their substantial interests. DER quotes the following from the final order in Case No. 87-3007F:

> The fact that Petitioners availed themselves of the point of entry which is open to members of the public through Rule 17-103.155(1)(a) who claim that their substantial interests may be affected by agency action, does not transform this action into one which has been "initiated by" the Department. At page 5.

But the very next sentence articulates an essential premise for the conclusion quoted: "Petitioners [in the *Booker Creek* case] were entitled to no more specific notice of the Department's intended action than the public at large. . . ." At page 5. Since the petitioners in the *Booker Creek* case never demonstrated any substantial interest different from the interests of "the public at large," they never showed that DER was "required by law . . . to advise [them] . . . of a clear point of entry." Section 57.111(3)(b), Florida Statutes (1987).

### Entitled To A Point Of Entry

In the present case, petitioners Gulf and Rudloe pleaded and proved special, substantial interests differing from those of the public at large. A party whose substantial interests are to be determined by agency action has a legal right to participate in formal adjudicatory proceedings before action is taken, when material facts are disputed. *In the matter of Surface Water Management Permit No. 50-01420-S,* 515 So.2d 1288 (Fla. 4th DCA 1987); *NME Hospitals, Inc. v Department of Health and Rehabilitative Services,* 490 So.2d 1300 (Fla. 1st DCA 1986) (on reh.); *Capeletti Brothers v Department of Transportation,* 362 So.2d 346 (Fla. 1st DCA 1978); *Gadsden State Bank v Lewis* 348

**209**

So.2d 343 (Fla. 1st DCA 1977). The record shows that Gulf was entitled to "a clear point of entry," and that DER made one available.

If DER had furnished a copy of its notice of intent to grant to a member of the public who had no substantial interest in the grant of the proposed permit, this circumstance would not have transformed the recipient into a party entitled to a clear point of entry into the proceeding. But these petitioners proved more than that they received a copy of the notice of intent to grant. They also established their substantial interests in the permitting decision. Gulf demonstrated that DER was "required by law . . . to advise [it] . . . of a clear point of entry after," Section 57.111(3)(b), Florida Statutes (1987) the notice of intent to grant issued.

An interpretation of Section 57.111(3)(b), Florida Statutes (1987) that allowed an award of attorney's fees to a small business whose permit application a state agency proposed to deny unjustifiably, but which did not allow an award to a small business whose legal rights were threatened when an agency proposed to grant a permit to another unjustifiably might incline agencies to grant permits in doubtful cases. The Florida Equal Access to Justice Act evinces no such skewed purpose. The Act authorizes awards of fees and costs to deter "unreasonable government actions," Section 57.111(2), Florida Statutes (1987), and to "diminish the deterrent effect of seeking review of, or defending against, governmental action by providing in certain situations an award of attorney's fees and costs against the state," *id.*, whether the unreasonable governmental action is the grant or the denial of a permit application.

### Prevailing Party

Gulf is a prevailing small business party within the meaning of Section 57.111(3)(c)1., Florida Statutes (1987). DER's final order denied DBI's application, and time for seeking judicial review has expired. Although Gulf did not prevail on every issue litigated, it obtained a favorable result. This is not a case where a party prevailed on one, but not all, of multiple counts litigated in a single proceeding. *Cf. Assad v Department of Professional Regulation,* No. 86-4720F (DOAH; June 12, 1987); *Anthony Gentele, O.D. v Department of Professional Regulation, Board of Optometry,* No. 85-3857F (DOAH; June 20, 1986) aff'd 513 So.2d 672 (Fla. 1st DCA 1987); *Annette J. Ruffin v Department of Professional Regulation, Division of Real Estate,* No. 85-4465F (DOAH; Feb. 7, 1986).

DER argues that it should never be liable in cases like these because it is the applicant, not the agency, who has the burden of proof. See

210

*Florida Department of Transportation v J.W.C. Co., Inc.,* 396 So.2d 778 (Fla. 1st DCA 1981). While DER's success as a litigant can insulate it from fees and costs, an applicant's failure to carry its burden can never justify assessing fees and costs against DER, when DER shows that its action in proposing to grant or deny a permit, action it takes before a hearing is even requested, was reasonable.

### Substantial Justification

DER is more than a "nominal party," Section 57.111(4)(d)(1), Florida Statutes (1987) in proceedings like these where it has both the initial responsibility to assess and the final authority to act on applications for environmental permits. But DER is not liable for attorney's fees and costs if its actions were substantially justified. Section 57.111(4)(a), Florida Statutes (1987). If a proceeding "had a reasonable basis in law and fact at the time it was initiated," Section 57.111(3)(e), Florida Statutes (1987), the Florida Equal Access to Justice Act does not relieve even prevailing small business parties of paying their own attorney's fees and costs. The Act is designed to discourage unreasonable governmental action, not to paralyze agencies doing the necessary and beneficial work of government.

While the fact that Gulf did not prevail on every issue litigated in Case No. 87-3715 does not compromise its status as a prevailing small business party, it does point up the complexity of the questions DER had to address before issuing its initial notice of intent to grant. Nothing in the record supports the view that the original intent to grant was irrational or unconsidered. After all, DER initially denied DBI's application, only reversing itself after numerous modifications had been made.

As far as the record shows, DER staff were unfamiliar with dye tracer studies when the initial intent to grant issued, and they did not, in any event, ignore the questions of dispersion and dilution. Indeed, at the time the initial intent to grant issued, DER proposed to forbid living aboard vessels at the marina altogether. Assuming DER has the burden to "affirmatively raise and prove," *Gentele v Department of Professional Regulation,* No. 85-3857F (DOAH; June 20, 1986) at p. 20, that the original notice of intent was substantially justified, *contra Ruffin v Department of Professional Regulation,* No. 85-4465F (DOAH; Feb. 7, 1986); see *Nutt v Department of Professional Regulation,* No. 85-3499F (DOAH; January 28, 1986) ("Petitioner . . . [has] burden of establishing that governmental action has been unreasonable." At p. 6), DER has successfully carried its burden here. See *Nutt,* pp. 6, 8; *Rodney G. Green and Charter Realty, Inc. v Department of*

*Professional Regulation, Division of Real Estate,* No. 85-3501F (DOAH; Dec. 5, 1985).

It is, accordingly,

ORDERED:

Petitioners' motion for fees and costs is denied.

DONE and ENTERED this 8th day of November, 1988, in Tallahassee, Florida.